In the Matter of METROPOLITAN SUBURBAN BUS AUTHORITY, Petitioner, v PUBLIC EMPLOYMENT RELATIONS BOARD, Respondent.

Third Department, May 22, 1975

*Cravath, Swaine & Moore (John H. Morse, John R. Hupper, Alexander R. Sussman* and *Billie Cape Abrahams* of counsel), for petitioner.

*Martin L. Barr (Robert J. Miller* of counsel), for respondent.

HERLIHY, P. J. The facts of this case do not appear to be in dispute. The petitioner, Metropolitan Suburban Bus Authority (hereinafter MSBA) is a subsidiary of the Metropolitan Transportation Authority and is a public benefit corporation of the State of New York. The MSBA dispatchers and foremen work in the Transportation Department and Maintenance Department, respectively, at the Uniondale, New York depot and the

Rockville Centre, New York depot. The hierarchy of personnel in the Transportation Department includes one superintendent; two supervisors, two assistant supervisors, 43 dispatchers and 445 bus drivers. The hierarchy of personnel in the Maintenance Department includes two supervisors, 11 foremen and 129 employees.

In the Transportation Department, the superintendent and the supervisors are responsible for all of the bus operations during the day shift while the assistant supervisors are in sole charge of the depots during the first night shift. The dispatchers work under the supervisors and assistant supervisors at each depot and are in charge on the second night shift. Whenever the supervisors or their assistants are away from the depot, the dispatchers are in charge of the depot's operations. The dispatchers' fundamental duties are to direct and oversee the daily work of the bus drivers; to warn, reprimand, and remove employees where the reason for such removal is to maintain the safety and the efficiency of operations; to recommend promotions, demotions, and discharge of employees to the superintendent; to handle complaints; to be formally involved in the first step of the grievance procedure; and to maintain employee records.

The foremen in the Maintenance Department work under two supervisors at the respective depots, and have substantially the same responsibilities as dispatchers. The foremen also have the authority, if they deem it appropriate, to allow the employees to temporarily work at a higher job classification.

The Public Employment Relations Board (hereinafter PERB) in its decision specifically found that the dispatchers and the foremen have the "authority to fire subordinate employees whose conduct violates standards of deportment imposed by the employer."

On August 15, 1973, the Subway-Surface Supervisors Association, an employee organization within the meaning of subdivision 5 of section 201 of the Civil Service Law (hereinafter Taylor Law) filed an amended petition with PERB for certification as the exclusive negotiating representative for various MSBA personnel, including the dispatchers and foremen. The MSBA opposed the certification petition with respect to the dispatchers and foremen alleging that they were not within the scope of coverage of the Taylor Law. After a hearing, PERB's Director of Public Employment Practices and Repre-

sentation (hereinafter Director) issued a decision on February 15, 1974 concluding that the dispatchers and foremen were , not exempt from Taylor Law coverage. On February 28, 1974 MSBA filed a "Statement of Exceptions of Employer to Decision of Director", alleging that all supervisory personnel are exempt from Taylor Law coverage or, in the alternative, that the duties of the dispatchers and foremen in this particular case necessitate a determination that they are exempt from coverage.

On April 29, 1974, PERB affirmed the Director's decision. The decision acknowledged a distinction between supervisory personnel who are included within the coverage of the Taylor Law, and managerial personnel who are excluded. PERB then affirmed the Director's determination that the dispatchers and foremen were only supervisory and not managerial, and therefore constituted an appropriate bargaining unit. On June 28, 1974 PERB certified the Subway-Surface Supervisors Association as the negotiating agent for the unit and ordered MSBA to bargain with the designated agent. On July 26, 1974 MSBA commenced this proceeding pursuant to section 213 of the Civil Service Law and pursuant to CPLR article 78.

The fundamental issue in this proceeding is whether or not the record contains substantial evidence to support the finding of PERB that the subject employees do not come within so much of paragraph (a) of subdivision 7 of section 201 of the Taylor Law definitions as designate what employees are to be managerial and, accordingly, exempt from coverage of the Taylor Law.

Paragraph (a) of subdivision 7 of section 201 of the Taylor Law as applicable herein provides: "The term public employee means any persons holding a position by appointment or employment in the service of a public employer, except that such term shall not include for the purposes of any provision of this article . * * * persons who may reasonably be designated from time to time as managerial or confidential". The statute defines managerial employees as persons "(i) who formulate policy or (ii) who may reasonably be required on behalf of the public employer to assist directly in the preparation for and conduct of collective negotiations or to have a major role in the administration of agreements or in personnel administration provided that such role is not of a routine or clerical nature and requires the exercise of independent judgment." This definition of managerial employees has been .

held not to be unconstitutionally vague, and may be properly applied to determine whether individuals should be covered by the Taylor Law *(Matter of Shelofsky v Helsby,* 32 NY2d 54).

The definition of managerial employees was added to the Taylor Law in 1971. Prior to that time, PERB had only excluded "executives" from coverage since they "directly act for management both in formulating and executing labor policies" *(Matter of Union Free School Dist. No. 13, Town of Hempstead in Valley Stream v Valley Stream Council of Supervisory Assns.,* 4 PERB 4310, 4312, citing *Matter of New York Div. of State Police,* 1 PERB 4012, 4014). When the 1971 amendment defined managerial employees, the Legislature stated: "It is the intention of the legislature that designations of employees as management * * * reflect the extent to which a public employer has from time to time organized itself for collective negotiations. It is not the intention of the legislature to destroy existing employer employee negotiating units such as principals or other school administrators who do not formulate policy or who do not have a significant role in employee relations" (L 1971, ch 503, § 5, as amd by ch 504, § 2).

The statutory amendment may reasonably be construed as not intending to alter existing groups of organized employees, even though they are clearly of a high ranking supervisory nature, insofar as the public employer had already recognized such groups and was negotiating therewith prior to the enactment of the exception for managerial employees in 1971.

In *Matter of Copiague and Hempstead* (6 PERB 3002, affd without opn as to the principals of the Hempstead School— *Matter of Board of Educ. of School Dist. No. 1 [Hempstead Public Schools] v Helsby,* 42 AD2d 1056, affd 35 NY2d 877) it was held by PERB that not all employees who perform supervisory tasks are to be considered managerial for the purpose of the Taylor Law coverage. In particular, PERB held that since the Hempstead principals had been organized and represented in negotiations with the public employer prior to the exception created for managerial employees, the statute permitted less discretion on the part of PERB in regard to an affirmative designation as managerial than as to principals who had not previously been organized and recognized. A review of the PERB decision establishes that the Hempstead principals did not have direct authority to hire or fire employees and that the principals did not participate in negotia-

tions by the public employer with employees subordinate to the said principals in any significant extent.

The determination of PERB that the mere fact that an employee is in a supervisory capacity is not sufficient to exclude him from the Taylor Law coverage is reasonable and has a sound basis. It is readily apparent that the Taylor Law definition of managerial employees is not the same as that adopted by the Federal Government in subdivision (a) of section 14 of the National Labor Relations Act (US Code, tit 29, § 164, subd [a]; see *Matter of Shelofsky v Helsby, supra,* p 60, for the substance of the National Labor Relations Act provisions). Thus, precedents in the private sector should not be applied to this public sector issue. Consequently MSBA's position that all employees who perform any supervisory activities are excluded from being organized into a bargaining unit is without merit. Merely labelling a position as managerial or supervisory cannot determine whether such employees are covered by the Taylor Law. Accordingly, PERB was correct in interpreting the Taylor Law as requiring a consideration of the nature of the activities of the subject employees and a determination of whether or not such activities come within the statutory definition of managerial employees.

In this particular case the subject employees' activities require solely a consideration of whether they "have a major role in the administration of agreements [collective bargaining] or in personnel administration provided that such role is not of a routine or clerical nature and requires the exercise of independent judgment."

The present record establishes that the subject employees are involved in the administration of collective bargaining agreements as to subordinate employees, however, the record does not establish that there is any major role performed in regard to the administration of such agreements. The record establishes that the subject employees are the ones to whom subordinates would first make their complaints or gripes known and that in such initial questioning the subject employees would merely be ascertaining factual matters and not making any major interpretation of the agreements. In regard to such complaints as are brought to them by subordinates, the subject employees might later be involved as witnesses to factual matters in grievance proceedings. However, they clearly have no power to resolve actual grievances once such procedure goes beyond this initial aspect. Accordingly, the

record contains substantial evidence to support the finding of PERB that the subject employees do not warrant a designation as managerial because of their role as supervisors in regard to the administration of collective agreements with subordinate employees.

The facts outlined hereinabove also clearly establish an important role in personnel administration. Among other things, the record establishes and PERB found that the subject employees may terminate the employment of subordinates for misconduct. The record also establishes that such a termination of employment would be subject to further proceedings and could be overruled by the subject employees' higher authorities. Furthermore, it is established that the subject employees have no role in establishing the standards for terminating employees and may only discharge for conduct on the part of subordinate employees which would immediately affect their capacity to perform their duties without danger to the public.

From the language of the statute and the expressed intention of the Legislature as quoted hereinabove, it appears that the definition of managerial employees was only intended to apply to high-level employees having substantial discretionary responsibility as to the operation of the department for the public benefit and, accordingly, as to personnel administration some power to set standards. Upon the present record the subject employees are given powers which directly affect personnel administration, but, the powers are exercisable only in accordance with standards which they have no part in formulating and in substance they are merely a basic level of management exercising "routine" roles and having no apparent "major" role in personnel administration. Accordingly, the record contains substantial evidence to support the finding of PERB that the employees do not come within the definition of managerial employees.

The determination should be confirmed, and the petition dismissed, without costs.

GREENBLOTT, MAIN, LARKIN and REYNOLDS, JJ., concur.

Determination confirmed, and petition dismissed, without costs.