■ In the Matter of JONATHAN LIPPMAN, as Chief Administrative Judge of the Courts of the Unified Court System of the State of New York, Petitioner, v PUBLIC EMPLOYMENT RELATIONS BOARD, Respondent. [694 NYS2d 510] —Spain, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent which held that certain high level positions within the Unified Court System were not managerial or confidential pursuant to Civil Service Law § 201 (7) (a).

We are presented in this special proceeding with the question of whether respondent properly denied and dismissed the application of the employer, the Unified Court System of the State of New York (hereinafter UCS), requesting the designation of nine high-level nonjudicial UCS employees as managerial or confidential pursuant to Civil Service Law § 201 (7) (*see,* 4 NYCRR 201.10).[1] Under Civil Service Law § 201 (7) (a), employees who are designated "managerial or confidential" are excluded from the definition of "public employees" and, as such, are generally not covered by the myriad of rights and protections afforded to public employees under the Taylor Law (Civil Service Law § 200 *et seq.; see, e.g.,* Civil Service Law §§ 202, 209, 214). The employees at issue are appointees serving either the State Court of Appeals or the Appellate Division, First and Second Departments. The job titles at issue are as follow: Consultation Clerk, Court of Appeals; Assistant Consultation Clerk, Court of Appeals; Assistant State Reporter, Law Reporting Bureau; Chief Appellate Court Attorney (hereinafter ACA), Appellate Division, First Department; Deputy Chief ACA, Appellate Division, First Department; Chief Court Attorney,

---

1. UCS' original application included a request to designate, as managerial and confidential, Marjorie S. McCoy, then Chief Court Attorney of the Court of Appeals, and Craig D. Peterson, Chief Appellate Court Attorney, Appellate Division, Fourth Department. The Civil Service Employees Association consented to this requested designation and, based upon that stipulation and the assertions as to their duties and responsibilities in UCS' application, the application was granted as to these two titles but otherwise it was dismissed. No exceptions were filed with respondent with respect to these designations, and said decision therefore became final (*see,* 4 NYCRR 201.10 [g]); these designations, therefore, were not before respondent (*see,* Civil Service Law § 213) and are not at issue in this proceeding.

Grievance Committee, Appellate Division, First Department; Chief ACA, Appellate Division, Second Department; Deputy Chief ACA, Appellate Division, Second Department; and Supervisor of Decision Department, Appellate Division, Second Department. All are in a negotiating unit represented by the Civil Service Employees Association, Inc., Local 1000, AFSCME, AFL-CIO (hereinafter CSEA). Because we conclude that respondent's determination denying the designations is, in all respects, rational and consistent with the fundamental policies underlying the Taylor Law (*see,* Civil Service Law § 200 *et seq.*), we confirm its determination.

As a threshold matter, we endeavor to discern the scope of our review of respondent's interpretation of the term "public employee" under Civil Service Law § 201 (7), which involves its subsidiary interpretation of the terms "managerial" and "confidential" and its application to the subject employees' titles. In that regard, we are instructed that "[a]n administrative agency's interpretation of the statute it is charged with implementing is entitled to varying degrees of judicial deference depending upon the extent to which the interpretation relies upon the special competence the agency is presumed to have developed in its administration of the statute" (*Matter of Rosen v Public Empl. Relations Bd.,* 72 NY2d 42, 47; *see, Matter of Gruber [New York City Dept. of Personnel—Sweeney],* 89 NY2d 225, 231). Great deference is accorded to an agency's judgment where its interpretation "involves knowledge and understanding of underlying operational practices or entails an evaluation of factual data and inferences to be drawn therefrom" (*Kurcsics v Merchants Mut. Ins. Co.,* 49 NY2d 451, 459; *see, Matter of Rosen v Public Empl. Relations Bd., supra,* at 47). However, it has been repeatedly stated that "where * * * the question is one of pure statutory construction 'dependent only on accurate apprehension of legislative intent [with] little basis to rely on any special competence' * * * judicial review is less restricted as ' "statutory construction is the function of the courts" ' " (*Matter of Rosen v Public Empl. Relations Bd., supra,* at 47-48, quoting *Kurcsics v Merchants Mut. Ins. Co.,* 49 NY2d 451, 459; *see, Matter of Gruber [New York City Dept. of Personnel—Sweeney], supra; Matter of Town of Mamaroneck PBA v New York State Pub. Empl. Relations Bd.,* 66 NY2d 722, 724).

The task of distinguishing between questions of "pure statutory construction" and instances where deference to an agency's expertise is appropriate proves to be somewhat elusive, as " 'the resolution of ambiguity in a statutory text is often more a

question of policy than of law' " (*Matter of Gruber [New York City Dept. of Personnel—Sweeney]*, *supra*, at 242 [Levine, J. dissenting], quoting *Pauley v BethEnergy Mines*, 501 US 680, 696). Notably, the Court of Appeals has repeatedly stated that, as the agency charged with implementing the fundamental policies of the Taylor Law, respondent is "presumed to have developed an expertise and judgment that requires us to accept its construction if not unreasonable" (*Matter of Village of Lynbrook v New York State Pub. Empl. Relations Bd.*, 48 NY2d 398, 404; *see*, *Matter of Board of Educ. of City School Dist. v New York State Pub. Empl. Relations Bd.*, 75 NY2d 660, 666; *Matter of Town of Mamaroneck PBA v New York State Pub. Empl. Relations Bd.*, *supra*, at 724; *Matter of West Irondequoit Teachers Assn. v Helsby*, 35 NY2d 46, 50-51; *see also*, Civil Service Law §§ 200, 205 [5]). These cases suggest that our review of respondent's interpretation of the Civil Service Law is so limited (*see*, *Matter of Board of Educ. of City School Dist. v New York State Pub. Empl. Relations Bd.*, *supra*; *Matter of Village of Lynbrook v New York State Pub. Empl. Relations Bd.*, *supra* [according deference to respondent's interpretation of "retirement benefits" under Civil Service Law § 201 (4)]; *see also*, *Matter of Town of Mamaroneck PBA v New York State Pub. Empl. Relations Bd.*, *supra*, at 724; *Matter of West Irondequoit Teachers Assn. v Helsby*, *supra*; *Matter of Evans v Public Empl. Relations Bd.*, 113 Misc 2d 986), although respondent's interpretation of other laws ordinarily need not be accorded deference (*see*, *Matter of Schenectady Police Benevolent Assn. v New York State Pub. Empl. Relations Bd.*, 85 NY2d 480 [General Municipal Law]; *Matter of Newark Val. Cent. School Dist. v Public Empl. Relations Bd.*, 83 NY2d 315 [Public Health Law]; *Matter of Webster Cent. School Dist. v Public Empl. Relations Bd.*, 75 NY2d 619 [Education Law]; *Matter of Board of Educ. of City School Dist. v New York State Pub. Empl. Relations Bd.*, *supra*, at 665 [same]; *Matter of Town of Mamaroneck PBA v New York State Pub. Empl. Relations Bd.*, *supra*, at 724 [Town Law]). Indeed, this Court has consistently accorded deference to respondent's interpretations of the Taylor Law, in view of its expertise with respect to the fundamental policies underlying that law (*see*, *e.g.*, *Matter of State of New York [State Univ.] v New York State Pub. Empl. Relations Bd.*, 181 AD2d 391 [interpretation of "public employees" under Civil Service Law § 201 (7) (a)]; *Matter of University of State of N. Y. v Newman*, 180 AD2d 396 [interpretation of "public employer" under Civil Service Law § 201 (7) (a)]).

By contrast, in its more recent pronouncement in *Matter of Rosen v Public Empl. Relations Bd.* (72 NY2d 42, 47, *supra*),

the Court of Appeals, although ultimately agreeing with respondent's conclusion, held that the issue of whether certain conduct constituted "employee organization" within the meaning of Civil Service Law § 201 (5) and was protected by Civil Service Law § 202 was a question of "pure statutory construction" for the courts, to which deference to respondent's expertise need not be accorded. It is unclear if *Rosen* represents a departure from the principles of deference to respondent's expertise in interpreting the Taylor Law as articulated in *Matter of Village of Lynbrook v New York State Pub. Empl. Relations Bd.* (48 NY2d 398, *supra*) and its progeny.

In our view, respondent possesses special competence and has, in fact, developed an expertise in the administration of the Taylor Law; this is particularly evident here, as the interpretation and applicability of the statutory definitions of "management" and "confidential" under Civil Service Law § 201 (7) (a) have, since their adoption in 1971, largely been resolved at respondent's administrative level, and the courts have only infrequently been called upon to review its determinations (*see, Matter of Metropolitan Suburban Bus Auth. v Public Empl. Relations Bd.*, 48 AD2d 206; *Matter of Board of Educ.*, 6 PERB ¶ 3001, *affd sub nom. Board of Educ. v Helsby,* 42 AD2d 1056, *affd* 35 NY2d 877; *Matter of Evans v Public Empl. Relations Bd.*, 113 Misc 2d 986, *supra*; *see also, Matter of Shelofsky v Helsby*, 32 NY2d 54 [upholding constitutionality of management/confidential designation]). Thus, " '[s]o long as [respondent's] interpretation is legally permissible and so long as there is no breach of constitutional rights and protections' " we will accept respondent's construction if reasonable and not arbitrary or irrational (*Matter of Village of Lynbrook v New York State Pub. Empl. v Relations Bd.*, *supra*, at 404, quoting *Matter of West Irondequoit Teachers Assn. v Helsby*, 35 NY2d 46, 50, *supra*). Moreover, even if this proceeding were deemed to present a question of "pure statutory construction" (*Matter of Rosen v Public Empl. Relations Bd.*, *supra*, at 47), our independent review of the statute would not produce a different result.

Next, we turn to the proper standard of review. Both parties contend that the inquiry before the court is whether respondent's determination was supported by substantial evidence (*see,* CPLR 7803 [4]). However, the hearing that respondent afforded to the UCS on its application to designate these employees as management/confidential was discretionary and was clearly not required by law (*see,* 4 NYCRR 201.10 [h] [the Director of Employee Relations "may direct a hearing"]). Therefore,

the standard to be applied upon a CPLR article 78 review of respondent's determination interpreting and applying the Taylor Law is whether it was arbitrary and capricious (*see, Matter of Jennings v New York State Off. of Mental Health*, 90 NY2d 227, 239; *Matter of Niagara Mohawk Power Corp. v Public Serv. Commn.*, 164 AD2d 502, 505, *lv denied* 77 NY2d 808; *accord, Matter of Evans v Public Empl. Relations Bd.*, 113 Misc 2d 986, 988, *supra*; *contra, Matter of Metropolitan Suburban Bus Auth. v Public Empl. Relations Bd.*, 48 AD2d 206, 209, 212, *supra*). Accordingly, although the parties do not so argue, transfer to this Court was not warranted (*see*, CPLR 7804 [g]); however, in the interest of judicial economy, we will retain and decide the issues in this proceeding (*see, Matter of Mid-State Indus. v City of Cohoes*, 221 AD2d 705, 706).

We next turn to our review of respondent's determination denying UCS' requested designation. In 1971, the Taylor Law was twice amended to specifically, but narrowly, provide for the designation of certain public employees as "managerial" or "confidential" employees who may neither be members of, nor hold office in, any organization which represents, or seeks to represent, public employees (*see*, L 1971, ch 503, §§ 4, 16; ch 504, § 1; *see also*, Civil Service Law § 214; *Matter of Metropolitan Suburban Bus Auth. v Public Empl. Relations Bd.*, 48 AD2d 206, 210, *supra*; *Matter of Shelofsky v Helsby*, 32 NY2d 54, 58-59, *supra*; *Matter of Board of Educ.*, 6 PERB ¶ 3001, 3004-3005, *supra*; *Matter of State of New York*, 5 PERB ¶ 3001, 3003-3005). Previously, respondent had only, but more broadly, excluded "executives" from Taylor Law protections since they " 'directly act[ed] for management both in formulating and executing labor policies' " (*Matter of Metropolitan Suburban Bus Auth. v Public Empl. Relations Bd., supra*, at 210, quoting *Matter of Union Free School Dist. No. 13 v Valley Stream Council of Supervisory Assns.*, 4 PERB ¶ 4310, 4312; *see, Matter of State of New York*, 5 PERB ¶ 3001, 3004, *supra*). As amended, Civil Service Law § 201 (7) (a) provides, as relevant herein: "The term 'public employee' means any person holding a position by appointment or employment in the service of a public employer, *except* that such term shall not include * * * persons who may reasonably be designated from time to time as managerial or confidential upon application of the public employer to [respondent]" (emphasis supplied). That provision defines managerial employees as persons: "(i) who *formulate policy* or (ii) who may reasonably be required on behalf of the public employer to assist directly in the preparation for and conduct of collective negotiations or to have a *major role in* the administration of agreements or in *personnel administration*

provided that such role is not of a routine or clerical nature and requires the exercise of independent judgment" (Civil Service Law § 201 [7] [a] [emphasis supplied]). The statute further defines employees as confidential "only if they are persons who assist and act in a confidential capacity to managerial employees" (Civil Service Law § 201 [7] [a]).

In excluding managerial and confidential employees from the protection of the Taylor Law, the Legislature cautioned that it was not its intent to destroy existing employer-employee negotiating units, and respondent has repeatedly reiterated that the statutory criteria should be applied conservatively and narrowly, and employees should not be excluded except in very clear instances with all uncertainties resolved in favor of Taylor Law coverage (*see, State of New York*, 5 PERB ¶ 3001, 3004, *supra*; *see also, Matter of Metropolitan Suburban Bus Auth. v Public Empl. Relations Bd.*, 48 AD2d 206, 210, *supra*; *Matter of Rockland Professional Mgt. [County of Rockland]*, 28 PERB ¶ 3063; *Matter of Watervliet Hous. Auth.*, 18 PERB ¶ 3079; *Matter of Board of Educ.*, 6 PERB ¶ 3001, 3004-3005, *supra*).

Petitioner, the Chief Administrative Judge of the Courts of the UCS, contends that respondent should have designated these employees as managerial based upon their role in the policy-making process of the courts where they work and the active role that seven[2] of the subject employees take in the personnel administration that requires the exercise of independent judgment which extends beyond routine supervisory responsibilities.[3] Petitioner also argues that respondent's conclusion, that none of the subject employees should be designated as "confidential", is belied by the record which establishes, as alleged in the verified petition, that they are "routinely included in staffing discussions and personnel decisions before such decisions are finalized and shared with employees or their union representatives, and that [they] are consulted with, and exposed to, information in the budget preparation process that impacts upon personnel actions". While an employer's opinion that certain employees are management or confidential is entitled to serious consideration, respondent's determination must be based upon the application of the statutory criteria to

---

**2.** Petitioner does not argue that either the Consultation Clerk for the Court of Appeals or that Court's Assistant Consultation Clerk were involved in personnel administration.

**3.** Although petitioner conclusorily so argued in his application, he did not argue in his exceptions, or in this proceeding, that any of these nine employees should be designated as "managerial" because they "assist directly in the preparation for and conduct of collective negotiations" within the meaning of Civil Service Law § 201 (7) (a) (ii).

the parties' evidence (*see, Matter of State of New York*, 5 PERB ¶ 3001, 3003, *supra*). Upon our review of this record, which includes, *inter alia*, the testimony of seven of the nine[4] employees at issue, their title standards, the organizational charts of the courts at issue, as well as the testimony of the Chief Clerks of the Appellate Division, First and Second Departments, the Deputy Chief Clerk of the Court of Appeals and the State Reporter, we conclude that respondent rationally concluded that the requested designations of these employees was not warranted.

At the outset, we must consider the nature of the subject employees' duties and responsibilities to determine whether they come within the statutory definitions embodied in Civil Service Law § 201 (7) (a) (*see, Matter of Metropolitan Suburban Bus Auth. v Public Empl. Relations Bd.*, 48 AD2d 206, 211, *supra*). Three of the subject employees work for the Court of Appeals. The record discloses that Andrew Klein and John Asiello, the Consultation Clerk and Assistant Consultation Clerk for the Court of Appeals, respectively, attend, along with the Clerk of the Court, the court's daily in-session conferences at which pending cases and motions are discussed; they generally give legal, procedural advice to the court and its legal staff and perform other duties pertaining to the substantive work and procedure of the court and, on occasion, discuss and draft proposals to change the court's rules. They generally either do not participate in or do not attend the Judges' conferences at which administrative matters, such as employee discipline, proposed legislation, staffing or UCS budgets, are discussed. The Assistant State Reporter, William Hooks, oversees the editing of decisions by the Law Reporting Bureau under the supervision of the State Reporter and Deputy State Reporter.[5] While Hooks, *inter alia*, makes hiring and promotional recommendations, assists in the State Reporter's preparation of the Bureau's proposed budget, and trains, advises and supervises the Bureau's legal editors and is involved in informal disciplinary measures, the Court of Appeals makes the final determinations on budgetary, hiring, promotional and disciplinary matters.

---

4. The two employees at issue who were not called to testify were William Hooks, the Assistant State Reporter, Law Reporting Bureau, and John Asiello, the Assistant Consultation Clerk of the Court of Appeals. We note that Frederick Muller, the then-State Reporter, and Andrew Klein, the Consultation Clerk of the Court of Appeals, did testify.

5. On stipulation, both the State Reporter and the Deputy State Reporter have previously been designated managerial (*Matter of State of New York [Unified Court Sys.]*, 22 PERB ¶ 4000.06; *State of New York Unified Court Sys.*, 15 PERB ¶ 4029).

Three of the employees serve (or served) at the Appellate Division, First Department: Leland Scopp, the Chief ACA; William Barkin, the Deputy Chief ACA; and Hal Lieberman, the Chief Court Attorney for the Grievance Committee. The record discloses that Scopp, assisted by Barkan, manages the court's legal research department under the direction and supervision of the court's Presiding Justice and Clerk of the Court. Aside from assigning and performing substantive legal work on pending cases, these employees make hiring and promotional recommendations for law assistant positions. Scopp has also made disciplinary recommendations and has been involved in developing and implementing amendments to the court's rules of procedure. Lieberman, under the direction of the Clerk of the Court,[6] supervised and oversaw the legal work of the Court's Grievance Committee's Office of Chief Counsel, consisting of 19 attorneys and support staff. The Court-appointed Grievance Committee, headed by a Policy Committee to which Lieberman reported, handles allegations of attorney misconduct and imposition of attorney discipline (*see*, 22 NYCRR part 605, *et seq.*). Lieberman prepared and submitted to the court the Grievance Committee's initial proposed budget subject to the court's and UCS' adjustments, made program and other related recommendations to the Policy Committee, and offered recommendations pertaining to hiring, promotion and discipline to be effected by others.

The remaining three employees serve (or served) at the Appellate Division, Second Department: Susan Garry, the Chief ACA; Susan Harkavy, the Deputy Chief ACA; and James Pelzer, the Supervisor of the Decisions Department. The record demonstrates that Garry and Harkavy generally manage their law department staff of 54 attorneys and perform complex legal work for the court on pending appeals. While reporting to the Deputy Clerk, they make recommendations related to hiring and work performance and, along with Pelzer, implemented a plan developed by the Presiding Justice and others to reduce a backlog. All three employees meet periodically with the Presiding Justice to discuss staff issues and calendaring decisions. The record shows that Pelzer, along with the staff attorneys he supervises, essentially reviews and edits the court's work product prior to publication, supervises staff attorneys who draft proposed decisions, advises attorneys and *pro se* litigants, supervises the library and computer departments, reviews orders to show cause and makes hiring recommendations.

---

**6.** The Clerk of the Court was previously designated as managerial on consent of all parties (*Matter of State of New York [Unified Court Sys.]*, 11 PERB ¶ 4054).

On this record, we find no basis to disturb respondent's determination that the subject employees are not managerial as they do not "formulate policy" or have a major role in personnel administration as contemplated by Civil Service Law § 201 (7) (a). Respondent's long-standing definitions of policy formulation—to which it adhered on this application—includes both "a person who has the authority or responsibility to select among options and to put a proposed policy into effect, [and] also a person who *participates with regularity* in the essential process which results in a policy proposal and *the decision to put such a proposal into effect*" (*Matter of State of New York*, 5 PERB ¶ 3001, 3005, *supra* [emphasis supplied]; *see, Matter of Rockland Professional Mgt. [County of Rockland]*, 28 PERB ¶ 3063, *supra*). Critically, policy has been defined as "the particular objectives of a government or agency thereof in the fulfillment of its mission and the methods, means and extent of achieving such objectives" (*Matter of State of New York*, 5 PERB ¶ 3001, 3005, *supra*; *see, State of New York [Unified Court Sys.]*, 14 PERB ¶ 3105, 3178). Restated, "[t]o formulate policy is to participate with regularity in the essential process involving the determination of goals and objectives of [UCS], and of the methods for accomplishing those goals and objectives that have a substantial impact upon [their] affairs and * * * constituency * * * [It] does not extend to the determination of methods of operation that are merely of a technical nature" (*Matter of City of Binghamton*, 12 PERB ¶ 3099, 3185, *supra*; *see, Matter of Civil Serv. Empls. Assn. [County of Nassau]*, 31 PERB ¶ 8002).

It has been recognized that Judges—and their law assistants—do not make "policy" within the meaning of Civil Service Law § 201 (7) (a) when they render decisions in court actions and proceedings (*see, State of New York, Unified Court Sys.*, 14 PERB ¶ 3105, 3178, *supra, confirmed sub nom. Matter of Evans v Public Empl. Relations Bd.*, 113 Misc 2d 986, *supra*). The subject employees are likewise not involved in formulating policy when they assist in the substantive, jurisprudential decision making of the courts they serve. To be sure, a rational distinction has been drawn between the ultimate work product or judicial decisions of the courts which do not constitute the "policy" of the Judicial Branch, and the auxiliary, administrative decisions regarding the methods of accomplishing UCS' mission; the latter are vested in the Chief Judge, the Chief Administrator, the Administrative Board, the Judicial Conference and certain of their designees (*see*, Judiciary Law art 7-A; NY Const, art VI, § 28). Respondent has recognized that such administrative decisions amount to "policy" formulation under

Civil Service Law § 201 (7) (a) and "provide the institutional framework within which the daily business of the judiciary is conducted", i.e., the issuance of decisions in actions and proceedings (*State of New York [Unified Court Sys.]*, 14 PERB ¶ 3105, 3179, *supra*).

Upon our review, we find that respondent reasonably concluded that these employees, although serving their respective courts in important and fairly high-level informational, advisory and implementer roles, do not regularly participate in "the essential process which results in * * * the decision to put [Unified Court System policy] proposal[s] into effect" (*Matter of State of New York*, 5 PERB § 3001, 3005, *supra*). Indeed, it has not been established that they shape and define UCS' (or their courts') overall operation, direction and objectives in furtherance of its institutional mission, or determine the methods, means and extent of achieving such objectives (*see, id.*; *see also, State of New York [Unified Ct. Sys.]*, 14 PERB ¶ 3105, 3178, *supra*; *Matter of City of Binghamton*, 12 PERB ¶ 3099, *supra*). While many of these employees advise and contribute to their courts in varying degrees on subjects governed by and authority conferred under Judiciary Law article 7-A (*see, e.g.*, Judiciary Law § 211 [1]) and NY Constitution, article VI, § 28, and while the decisions made with regard to these subjects and in furtherance of these powers are "policy" within the meaning of Civil Service Law § 201 (7) (a) (i), it does not follow that the contributing employees are policy formulators within that provision (*see, State of New York [Unified Ct. Sys.]*, 14 PERB ¶ 3105, 3178-3179, *supra*; *see also, Matter of Rockland Professional Mgt. [County of Rockland]*, 28 PERB ¶ 3063, *supra*; *Matter of State of New York [Unified Ct. Sys.]*, 17 PERB ¶ 4020, *affd* 17 PERB ¶ 3079; *Matter of City of Binghamton*, 12 PERB ¶ 4022, *mod* 12 PERB ¶ 3099).

Petitioner's principal contention in this regard is that employees need not be the ultimate decision makers to be designated as managerial policy formulators, and that it is sufficient if they assist the ultimate decision makers. Certainly, respondent has recognized that "[t]he definition of a policymaker is, and must be, sufficiently broad to include those relatively few individuals who directly assist the ultimate decision makers in reaching the decisions necessary to the conduct of the business of government" (*Matter of Lackawanna White Collar Career Empls. Assn. [City of Lackawanna]*, 28 PERB ¶ 3043; *see, Matter of Civil Serv. Empl. Assn. [Town of Clarence]*, 31 PERB ¶ 4009). However, all employees who advise the ultimate decision makers are not automatically policy formula-

tors to be designated as managerial and excluded from the Taylor Law's protections. Rather, the employer must demonstrate, as noted, that the subject employees participate in the essential processes by which UCS (and its courts) makes decisions regarding its mission and means by which those policy objectives can best be achieved (*see, id.*; *see also, Matter of State of New York*, 5 PERB ¶ 3001, 3005, *supra*). The determination of who "directly assists" the ultimate decision makers necessarily involves drawing distinctions and lines among employees based, *inter alia*, upon the nature, timing and level of their involvement in the decision-making processes, and upon the practices and hierarchy of the employer. We do not believe that, on the record before us, respondent acted arbitrarily or irrationally in making such distinctions and determinations regarding these employees.

Under Civil Service Law § 201 (7) (a) (ii), employees may also be designated as managerial based upon their labor relations responsibilities for the public employer. Aside from UCS' policy formulation contentions, petitioner argues that seven of the employees at issue (excluding Klein and Asiello) have "a major role * * * in personnel administration * * * [that] is not of a routine or clerical nature and requires the exercise of independent judgment" (*see*, Civil Service Law § 201 [7] [a] [ii]). We perceive no basis upon which to disturb respondent's finding on this record that these employees may not, in the exercise of their supervisory duties, alter or change UCS' procedures or operations and do not have the power to set standards so as to be deemed managerial in this respect (*see, Matter of Board of Educ.*, 15 PERB ¶ 3031; *Matter of Metropolitan Suburban Bus Auth. v Public Empl. Relations Bd.*, 48 AD2d 206, 212, *supra*). Respondent has drawn a critical and long-standing distinction, for purposes of Taylor Law coverage, between the broader category of employees who perform supervisory tasks who are covered by the Taylor Law protections, and managers, a more restrictive category of employees who have the authority to change governmental procedures and operations and are therefore excluded from the Taylor Law, a distinction this Court has upheld as reasonable and sound (*see, Matter of Metropolitan Suburban Bus Auth. v Public Empl. Relations Bd., supra*, at 210-211; *see also, Matter of City of Binghamton*, 12 PERB ¶ 3099, *supra*; *Matter of Board of Educ.*, 6 PERB ¶ 3001, 3005-3006, *supra*; *Matter of State of New York, supra*, 5 PERB ¶ 3001, 3006-3007, *supra*). Although the subject employees perform an important role in, and have powers directly affecting, personnel administration, for example by making hiring, promotional, disciplinary, staffing and other recommendations,

the record does not support the conclusion that they have fundamental control over the direction and scope of UCS' mission or that they exercise independent judgment reflecting substantial discretionary responsibility, including standard setting (*see, Matter of Metropolitan Suburban Bus Auth. v Public Empl. Relations Bd., supra,* at 210-213; *see also, Matter of Rockland Professional Mgt. [County of Rockland],* 28 PERB ¶ 3063, *supra; Matter of Newburgh Enlarged City School Dist.,* 21 PERB ¶ 3047). Thus, respondent reasonably concluded that they are not managers under this criterion.

To be deemed confidential within the meaning of Civil Service Law § 201 (7) (a) (ii), an employee must assist and act in a confidential capacity to a managerial employee who performs the statutorily enumerated labor relations responsibilities for managerial employees, including collective bargaining negotiations, contract administration, and personnel administration (*see, Matter of State of New York,* 5 PERB ¶ 3001, 3006, *supra; see also, Matter of Civil Serv. Empls. Assn. [Town of DeWitt],* 32 PERB ¶ 3001; *Matter of Newburgh Enlarged City School Dist.,* 21 PERB ¶ 3047, *supra*). Importantly, work that employees perform for a person who is managerial due to the formulation of policy does not qualify the employees for confidential designation (*see, Matter of City of White Plains,* 19 PERB ¶ 4005). As such, this definition of confidential employee incorporates a two-part test, both prongs of which must be satisfied for designation: (1) the employee to be designated must assist a Civil Service Law § 201 (7) (a) (ii) manager in the delivery of labor relations duties described in that subdivision—a duty oriented analysis; and (2) the employee assisting the section 201 (7) (a) (ii) manager must be acting in a confidential capacity to that manager—a relationship oriented evaluation (*see, Matter of Civil Serv. Empls. Assn. [Town of DeWitt],* 32 PERB ¶ 3001, *supra; Matter of County of Orange,* 31 PERB ¶ 3016).

Petitioner points to the subject employees' involvement in personnel and budgetary discussions as the basis for his claim of entitlement to the requested confidential designation. Apparently focusing on both the subject employees' supervisory duties and the relationships within which they perform their labor relations duties, respondent concluded that any such "information they are exposed to comes to them by virtue of their fulfillment of their supervisory responsibilities, an insufficient basis for a confidential designation * * *. Such limited knowledge does not encompass labor management relations information significant to the basic mission of the employer. Neither is

their limited involvement in budget preparation supportive of confidential designation." That is, while the employees have duties which assist certain personnel and budgetary functions, petitioner has not shown that the information to which they are exposed, and the duties they perform, have a direct relationship to and impact upon collective negotiations and the administration of collective bargaining agreements, or present actual or apparent conflicts of interest, or clashes of loyalties, with their representation (*see, Matter of Civil Serv. Empls. Assn. [Town of DeWitt]*, 32 PERB ¶ 3001, *supra*; *cf., Matter of City of Newburgh*, 16 PERB ¶ 3053; *State of New York [Unified Ct. Sys.]*, 15 PERB ¶ 4029).

Notably, all supervisory employees working with or for managerial employees are not automatically or presumably confidential employees within the meaning of Civil Service Law § 201 (7) (a) (ii). Indeed, knowledge of personnel or disciplinary matters is often inherent in supervisory positions and does not warrant a confidential designation where, as here, it is limited and does not encompass labor relations information significant to the basic mission of the employer (*see, Matter of City of White Plains*, 19 PERB ¶ 4005, *supra*; *see also, Civil Serv. Empls. Assn. [County of Nassau]*, 31 PERB ¶ 8002, *supra*). Hence, the employees' access to and involvement in personnel records and matters, which are qualitatively and quantitatively narrow, is insufficient to support a confidential designation (*see, Matter of County of Orange*, 31 PERB ¶ 3016, *supra*; *Matter of Middle Mgt. Assn. [City School Dist.]*, 29 PERB ¶ 3038; *see also, Matter of Civil Service Empls. Assn. [Town of DeWitt]*, 32 PERB ¶ 3001, *supra*; *cf., Matter of Rockland Professional Mgt. [County of Rockland]*, 28 PERB ¶ 3063, *supra*).

Respondent also rationally determined that the limited involvement of these employees in circumscribed aspects of UCS' budget preparation and exposure to related information is not supportive of a confidential designation, as they were not thereby assisting in labor relations duties as contemplated by Civil Service Law § 201 (7) (a) (ii) (*see, Matter of Civil Serv. Empls. Assn. [Town of DeWitt]*, 32 PERB ¶ 3001, *supra*; *Matter of East Meadow Union Free School Dist.*, 16 PERB ¶ 3027). Further, Judges and Justices of UCS are not managerial employees within the contemplation of Civil Service Law § 201 (7) (a), although they are excluded from the definition of public employee (*see, State of New York [Unified Ct. Sys.]*, 14 PERB ¶ 3105, 3178, *supra*) and, thus, any substantive legal assistance to Judges and Justices cannot render an employee "confidential" within the meaning of section 201 (7) (a) (ii).

In confirming respondent's determination, we are reminded that the exclusions for managerial and confidential employees are an exception to the Taylor Law's strong policy of extending coverage to all public employees and are to be read narrowly, with all uncertainties resolved in favor of coverage (*see, Matter of State of New York*, 5 PERB ¶ 3001, 3006, *supra*; *see also, Matter of Civil Serv. Empls. Assn. [Town of DeWitt]*, 32 PERB ¶ 3001, *supra*; *Matter of Watervliet Hous. Auth.*, 18 PERB ¶ 3079). Petitioner has not shown that these supervisory employees are part of UCS' cadre of employees who deliver or assist in the delivery of collective bargaining, contract negotiation, personnel administration or policy formulation within the intendment of Civil Service Law § 201 (7) (a) whose loyalties may be conflicted by extending to them the representation rights afforded to public employees by the Taylor Law (*see, Matter of Civil Serv. Empls. Assn. [Town of DeWitt]*, 32 PERB ¶ 3001, n 2, *supra*, citing L 1971, ch 503, ¶ 5; *see also, Matter of Shelofsky v Helsby*, 32 NY2d 54, 60, *supra*).

Mikoll, J. P., Mercure, Peters and Carpinello, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.