[715 NYS2d 490]

In the Matter of INTERNATIONAL HIGH SCHOOL: A CHARTER SCHOOL AT LAGUARDIA COMMUNITY COLLEGE et al., Appellants, v RICHARD P. MILLS, as Commissioner of Education of the State of New York, Respondent.

Third Department, November 2, 2000

## APPEARANCES OF COUNSEL

*Fried, Frank, Harris, Shriver & Jacobson,* New York City (*Bonnie Steingart* of counsel), for appellants.

*Eliot Spitzer, Attorney General,* Albany (*Marcus J. Mastracco* of counsel), for respondent.

## OPINION OF THE COURT

PETERS, J.

Petitioners, alternative high schools located in Queens County, were part of a consortium of 28 schools which was granted, in May 1995, a five-year variance to develop alternative evaluative tools to assess student achievement by means other than the State Regents examinations. In 1996, petitioners applied for and obtained designations as "twenty-first century schools" under Education Law § 309-a (hereinafter the Twenty-First Century School Act). Pursuant thereto, the schools continued to be operated by the local board of education and were a part of the local school district (*see,* Education Law § 309-a [3] [c]; [4]) but were encouraged to implement differing educational philosophies and alternative educational assessment tools so long as they were "fair, reliable and valid" (Education Law § 309-a [2] [a]). In achieving this designation, such schools were exempt from implementing State Regents examinations to assess their students' achievement.[1] Pursuant to the oversight provision, respondent was authorized "either upon complaint or upon his or her own initiative, [to] revoke a school's designation as a twenty-first century school for good cause shown * * * after affording the school an opportunity to present arguments against revocation" (Education Law § 309-a [5]).

---

1. Twenty-first century schools are subject to the statutory constraints of Education Law § 309-a. They are reviewed annually to determine whether the alternative assessments and educational philosophies forming the basis of their designation are achieving their intended purposes and whether the plan should be used as a model for other similarly situated schools.

In 1998, the Legislature enacted Education Law article 56, creating yet another educational incentive program entitled the " 'New York charter schools act of nineteen hundred ninety-eight' " (Education Law § 2850 [1] [hereinafter the Charter Schools Act]). This offered teachers, parents and community members an opportunity to form an educational institution which was permitted to operate independently from the local board of education and local school districts (*see*, Education Law § 2850). With their own governing board, teachers, school administrators and other school personnel, they are encouraged to devise highly innovative teaching methods to foster opportunities for students to actualize their potential while providing community members a choice of education alternatives so long as they remained "accountable for meeting measurable student achievement results" (Education Law § 2850 [2] [f]).

As this new program comported with the educational objectives and philosophies developed by petitioners in conjunction with their designations as twenty-first century schools, they pursued a fast-track conversion. The New York City schools' Chancellor, the charter entity to which these applications were first submitted, had the authority to require modifications or supplements to petitioners' proposals as a condition of approval (*see*, Education Law § 2852 [3]). Upon approval, petitioners would enter into a "proposed" agreement, known as the charter, which details the governing rules and regulations for the operation of the school and further contains additional terms or conditions required by applicable laws, rules and regulations "not inconsistent with law, [and] agreed upon by the applicant and the charter entity" (Education Law § 2852 [5]).

On August 5, 1999, petitioners executed, at the request of respondent, "additional assurances" as an addendum to their charter agreement. These additional assurances stated, as here relevant, that "[c]onsistent with state policy, existing testing variances for required Regents examinations may continue until the corresponding revised Regents exam [*sic*] are in place. After that time all alternative assessments must be reviewed and recommended by the State Assessment Panel and approved for use by the Commissioner." With the Chancellor's approval, their applications were submitted to the Board of Regents for further review (Education Law § 2852 [5-a]). There, as well, further terms or conditions could be agreed upon and become part of the governing charters (*see, id.*).

By letter dated July 26, 1999, the Education Department informed the Chancellor that a special meeting was scheduled

for August 9, 1999 to consider petitioners' applications; clarifications were sought with respect to several issues, including testing, since Education Law § 2854 (1) (d) mandated that "[s]tudents attending charter school shall be required to take regents examinations to the same extent such examinations are required of other public school students." In response to previous questioning by respondent on this issue, petitioners continuously asserted that they had waivers in place until May 2000 which allowed them to utilize alternative assessments to the State-mandated Regents exam requirements for graduation. On August 9, 1999, the Board of Regents voted to approve and issue petitioners' charters.

In November 1999, petitioners applied, as part of the original consortium of public schools, to extend the variance they had obtained in 1995 past June 2000. By determination dated January 26, 2000, respondent granted a one-year extension to the variances previously obtained for alternative student assessments in social studies, science, college-level mathematics and foreign languages. Yet, such determination noted that despite the consortium's view that they were exempt from administering the English Regents examination, the original variance application neither requested such alternative assessment nor was one granted by the former Commissioner who approved the original variance. This one-year extension was deemed to apply only to 16 of the original 28 member schools, with petitioners notably excluded since they received their charter status "with the condition that all of their students would take the required Regent examinations."

By letter dated March 2, 2000, petitioners challenged respondent's January 26, 2000 determination, asserting that they were not required to administer the English Regents examination by the terms of their original consortium variance and by their designations as twenty-first century schools. Finally, they noted that in their application to convert to charter school status, their ability to continue to use alternative assessments was clarified and approved of by the issuance of their charters. By letter dated May 11, 2000, respondent advised petitioners that their assertions were incorrect, fully adhering to the original determination. Emphasizing the need for charter schools to adhere to the statutory requirement that students take State examinations to properly compare the educational effectiveness of its pedagogical approach with the typical education programming received by students in public schools, it noted that during the meeting at which their

charters were approved, the Chancellor's representative publicly indicated petitioners' commitment to administer State examinations.

This CPLR article 78 proceeding was thereafter commenced. Petitioners alleged that respondent unlawfully revoked their twenty-first century school designations by failing to provide them with an opportunity to present arguments against revocation. Despite petitioners' urging that the determination be found to be arbitrary and capricious, Supreme Court denied the petition by finding that petitioners ceased to be twenty-first century schools once they chose to become charter schools. Upon entry of judgment, this appeal ensued.[2]

The issue distills to whether the provisions of the Twenty-First Century School Act are inconsistent with those of the Charter Schools Act such that by petitioners' conversion, pursuant to the Charter Schools Act, their status as twenty-first century schools was voluntarily relinquished. Relevant thereto is the provision in Education Law § 2854 of the Charter Schools Act which details, *inter alia*, that "[n]otwitstanding any provision of law to the contrary, to the extent that any provision of this article is inconsistent with any other state or local law, rule or regulation, the provisions of this article shall govern and be controlling" (Education Law § 2854 [1] [a]).

By virtue of statutory mandates, twenty-first century schools do not have a separate legal existence (*see*, Education Law § 309-a [1]), are governed by the board of education of the school district in which they are located and are subject to, *inter alia*, rules, policies and regulations promulgated by respondent. Except for those exemptions specifically granted to such schools to implement an approved twenty-first century school plan (*see*, Education Law § 309-a [3]), only certified teachers are authorized to teach in such schools (*see*, Education Law § 309-a [3] [c] [iv]). In contrast, charter schools are deemed separate legal educational corporations that act independently of a school district (*see*, Education Law § 2850 [2]; § 2851), are governed by a corporate board of trustees, may employ a portion of uncertified teachers (*see*, Education Law § 2854 [3] [a-1]) and are, with limited exceptions, exempt from all laws and regulations typically imposed upon public schools. Instead, they are governed in accordance with the terms and conditions contained within their charters. As separate

---

**2.** This Court denied petitioners' motion for a preliminary injunction and for a stay pending appeal by order dated June 9, 2000.

educational corporations, they are not eligible under Education Law § 309-a to apply for and receive twenty-first century school status.

The Charter Schools Act specifically provides that its students are required to take the State Regents examinations "to the same extent such examinations are required of other public school students" (Education Law § 2854 [1] [d]). Detailed in petitioners' charters is the acknowledgment that "[t]he proposed charter school will meet the same * * * student assessment requirements applicable to other public schools" and that "[c]onsistent with state policy, existing testing variances for required Regents examinations may continue until the corresponding revised Regents exam [sic] are in place." Placed in the context of respondent's regulations requiring all public schools to administer Regents examinations under the current diploma requirements (see, 8 NYCRR 100.5), we are asked to review whether respondent's interpretation of these statutes was made in violation of lawful procedure, affected by an error of law, or was arbitrary and capricious or an abuse of discretion (see, Matter of Board of Educ. v Mills, 250 AD2d 122, 125, lv denied 93 NY2d 803). In our view, respondent's determination survives judicial scrutiny.

The variances obtained by petitioners, whether through their membership in the consortium or by virtue of their twenty-first century school status, acknowledge that they would have the ability to use alternative educational assessments only up and until the revised State Regents examinations were in place. It appears undisputed that the contemplated revised State Regents examinations, especially the revised English Regents examination, had become a diploma requirement for the class of 2000 pursuant to part 100 of respondent's regulations (see, 8 NYCRR 100.5 [a] [5] [i] [a] [2]). Since the underlying determination is premised upon respondent's knowledge and understanding not only of the operational practices of all public schools but also that of charter schools and twenty-first century schools, we find properly grounded the determination that regardless of the variances or waivers obtained, they never included English either before and certainly not after the revised State English examination was in place (see, Matter of Lippman v Public Empl. Relations Bd., 263 AD2d 891, 894).

As to respondent's consideration of the statutory provisions of the Charter Schools Act and the Twenty-First Century School Act to determine whether a school can enjoy dual status, we find, after our review of their legislative histories, that

respondent's determination that their provisions are inconsistent is rational. Evidenced by the obvious difference in corporate structure, government and accountability, the statutory requirement that students attending a charter school be required to take the State Regents examinations logically implicates, in our view, the only standardized means by which assessments can be made of the charter school's educational plan and its students' success therewith. Focusing further on petitioners' contention that their students are only required to take Regents examinations "to the same extent such examinations are required of other public school students" (Education Law § 2854 [1] [d]) and that waivers have been specifically granted to twenty-first century schools and those in the consortium, we find such argument strained when viewing the reasons underlying the requirement for the administration of Regents examinations in the charter school setting.

Finally, we reject petitioners' contention that there was a revocation of their twenty-first century school status without a hearing. As it is well settled that in the case of doubt or ambiguity, " ' "the practical construction that has been given to a law by those charged with the duty of enforcing it * * * takes on almost the force of judicial interpretation" ' " (*Matter of Board of Educ. v Mills*, 250 AD2d 122, 125, *supra*, quoting *Matter of Lezette v Board of Educ.*, 35 NY2d 272, 281, quoting *Town of Amherst v County of Erie*, 236 App Div 58, 61, *affd* 260 NY 361, 369-370), the interpretation that there was a voluntary change in status, not a revocation, is rational or reasonable (*see, Matter of Lippman v Public Empl. Relations Bd.*, 263 AD2d 891, 894, *supra*; *Matter of Board of Educ. v Mills, supra*, at 125; *see also, Matter of Killian [General Motors Corp.— Sweeney]*, 89 NY2d 748, 752).

Accordingly, we find that Supreme Court properly upheld respondent's determination to require petitioners to administer the State Regents examinations.

MERCURE, J. P., SPAIN, CARPINELLO and GRAFFEO, JJ., concur.

Ordered that the judgment is affirmed, without costs.