■ In the Matter of CIVIL SERVICE EMPLOYEES ASSOCIATION, INC., LOCAL 1000, AFSCME, AFL-CIO, Petitioner, v NEW YORK STATE PUBLIC EMPLOYMENT RELATIONS BOARD et al., Respondents. [824 NYS2d 441]—

Cardona, P.J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Public Employment Relations Board which found that certain positions within respondent Dormitory Authority of the State of New York were managerial within the meaning of Civil Service Law § 201 (7) (a).

Respondent Dormitory Authority of the State of New York (hereinafter DASNY) is a legislatively-created, public benefit corporation which provides oversight and financing for various state construction projects (*see generally* Public Authorities Law, art 8, tit 4). In August 2002, DASNY filed an application with respondent Public Employment Relations Board (hereinafter PERB) seeking to designate certain employees as either managerial or confidential pursuant to Civil Service Law § 201 (7) (a). Under that statutory provision, employees designated as either managerial or confidential are excluded from the definition of "public employees" and, as such, are not afforded various benefits provided under the Taylor Law (*see* Civil Service Law § 200 *et seq.*).

In August 2005, an Administrative Law Judge granted DASNY's application as to one employee it requested as confidential, but denied the application with respect to eight

employees it sought to be designated as managerial.[1] PERB thereafter partially reversed that determination and designated the eight employees as managerial. In December 2005, petitioner—a labor organization representing the eight employees—commenced this CPLR article 78 proceeding challenging PERB's determination, which was subsequently transferred to this Court.[2]

The scope of our review in this proceeding is ascertaining whether respondent's determination is arbitrary and capricious (*see Matter of Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO, Ichabod Crane Cent. School Dist. CSEA Unit v New York State Pub. Empl. Relations Bd.*, 300 AD2d 929, 930-931 [2002]; *Matter of Lippman v Public Empl. Relations Bd.*, 263 AD2d 891, 895 [1999]). To that end, the Court of Appeals has indicated that, as the agency entrusted with administration of the Taylor Law (*see generally* Civil Service Law § 205), PERB is "presumed to have developed an expertise and judgment that requires us to accept its construction [of the Taylor Law] if not unreasonable" (*Matter of Incorporated Vil. of Lynbrook v New York State Pub. Empl. Relations Bd.*, 48 NY2d 398, 404 [1979]; *see Matter of Town of Mamaroneck PBA v New York State Pub. Empl. Relations Bd.*, 66 NY2d 722, 724 [1985]; *see generally Matter of Rosen v Public Empl. Relations Bd.*, 72 NY2d 42, 47-48 [1988]). Likewise, in light of PERB's special competence in this realm, this Court has recently afforded deference to PERB's exposition of the terms "management" and "confidential" as they are employed in Civil Service Law § 201 (7) (a) (*see Matter of Lippman v Public Empl. Relations Bd., supra* at 894).[3]

Turning to the statutory provision at issue herein, Civil Ser-

---

**1.** A number of employees listed in DASNY's original application were either designated managerial or confidential pursuant to a settlement between the parties or have been withdrawn from consideration by DASNY. The designation of these employees is not a subject of this proceeding.

**2.** We note that, although petitioner commenced this proceeding upon the ground that PERB's decision was not supported by substantial evidence, transfer to this Court was not warranted in this instance (*see* CPLR 7804 [g]). Inasmuch as it is within PERB's discretion to grant a hearing upon an application to designate employees as managerial or confidential (*see* 4 NYCRR 201.10 [h]), such hearing is not "pursuant to direction by law" (CPLR 7803 [4]; *see Matter of Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO, Ichabod Crane Cent. School Dist. CSEA Unit v New York State Pub. Empl. Relations Bd.*, 300 AD2d 929, 930 [2002]; *Matter of Lippman v Public Empl. Relations Bd.*, 263 AD2d 891, 894-895 [1999]). We nonetheless retain this proceeding in the interest of judicial economy.

**3.** In any event, even if petitioner was correct in claiming that PERB's interpretation is not entitled to deference, we are not persuaded that analysis of this case as a matter of "pure statutory construction" (*Matter of Rosen v Public Empl. Relations Bd., supra* at 47) would lead us to a different result.

vice Law § 201 (7) (a) provides: "Employees may be designated as managerial only if they are persons (i) who formulate policy or (ii) who may reasonably be required on behalf of the public employer to assist directly in the preparation for and conduct of collective negotiations or to have a major role in the administration of agreements or in personnel administration provided that such role is not of a routine or clerical nature and requires the exercise of independent judgment." Additionally, in a recent case clarifying which employees "formulated policy," PERB held that the definition must be "sufficiently broad" to include "persons who regularly participate in and influence a process by which the employer makes decisions regarding its mission and the means by which those policy goals and objectives can be best achieved" (*Matter of Public Empls. Fedn., AFL-CIO v State of New York*, 36 PERB ¶ 3029, 3085 [2003]; *see Matter of Lippman v Public Empl. Relations Bd., supra* at 900-901).

Against this framework, we cannot say that PERB's determination designating the eight employees as managerial was unreasonable or arbitrary. Looking first to the nature of the employees' duties and responsibilities (*see Matter of Lippman v Public Empl. Relations Bd., supra* at 897), we note that all of the job titles at issue are within the Office of Construction, one of the five main divisions headed by managing directors that report directly to the executive officers and board of directors of DASNY. The Office of Construction is divided into three subdivisions, Technical Services, Procurement and Project Management. All of the subject employees are Chiefs in either the Procurement or Project Management subdivisions.

Specifically, John Kemp is the Chief of the Construction Services Contracts unit within the Procurement subdivision. His job description states that his duties are "characterized by a high degree of independent judgment in the creation, modification and administration of Construction Contracts, and the development and implementation of [DASNY] policy and procedures." Furthermore, Kemp testified that, in general, he was responsible for overseeing the bidding process for contractors. Additionally, DASNY's organizational chart indicates that he oversees approximately 22 employees within his unit, and Kemp's immediate supervisor stated that, although Kemp does not make the final decisions regarding contracts, he routinely cooperates with other senior staff who then come to a consensus as a group about awarding bids.

Paul Koopman is the Chief of the Professional Services Contracts unit in the Procurement subdivision, which is responsible for coordinating and selecting the consultants for

DASNY projects, as well as administering those contracts after the consultants are selected. Koopman's job description is similar to that of Kemp's in terms of degree of independence and decision-making responsibilities, and his supervisor indicated that Koopman oversees two teams of professionals, one for large capital projects and another for projects with budgets under $5 million. Like Kemp, Koopman has worked with senior staff on a number of occasions to decide as a group how to deal with various issues. Both Koopman and Kemp are responsible for all personnel matters within their units, as well as preparing an annual budget.

The remaining six employees are all Chief Project Managers within the Project Management subdivision. The Project Management subdivision is divided into several subunits which are then further subdivided into regions, each of which is overseen by one of the Chief, Project Managers, who are essentially the direct supervisors for construction projects taking place within their region. They serve as a "liaison with clients, assist[ing] clients in all project related decisions," and are permitted to execute certain change orders. They are also responsible for dealing with all personnel issues within their units. Furthermore, consistent with PERB's conclusion that "the organizational structure of DASNY promotes participation in the decision-making process that is more than mere technical advice to single decision-makers," two senior supervisors testified that they regularly meet with the Chief, Project Managers and rely upon their feedback in making decisions.

Accordingly, although "exclusions for managerial . . . employees are an exception to the Taylor Law's strong policy of extending coverage to all public employees" (*Matter of Lippman v Public Empl. Relations Bd.*, 263 AD2d 891, 904, *supra* [1999]), given the evidence presented, it cannot be said that PERB's classification of the employees at issue as managerial was arbitrary and capricious.

Mercure, Crew III, Peters and Spain, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.