OPINION OF THE COURT
George B. Ceresia, Jr., J.
Petitioner New York State Electric & Gas Corporation (NY-SEG) seeks a judgment pursuant to article 78 of the Civil Practice Law and Rules annulling and setting aside four orders of the Public Service Commission of the State of New York (the Commission or PSC) and declaring that two flex rate contracts NYSEG has been directed to execute pursuant to the foregoing orders are null and void ab initio. The four orders at issue include an order directing entry into a flex rate contract between NYSEG and respondent Nucor Steel Auburn, Inc. (Nu-cor) issued by a single commissioner of the PSC on March 25, 2002 (March 25 Order) and adopted in full by the Commission on April 17, 2002; an order directing entry into a flex rate contract between NYSEG and respondent Corning Incorporated (Corning) issued by a single commissioner of the PSC on April 2, 2002 (April 2 Order) and adopted in full by the Commission on April 17, 2002; an order denying rehearing and stay and authorizing an enforcement proceeding related to the March 25 Order issued by the Commission on May 23, 2002; and an order denying rehearing and stay and authorizing an enforcement proceeding related to the April 2 Order issued by the Commission on May 23, 2002. The March 25 Order directed NYSEG, inter alia, to execute an electric service agreement (ESA) with Nucor, and the April 2 Order likewise directed NY-SEG, inter alia, to execute an ESA with Corning.
Petitioner challenges the above orders and contends that they are in excess of the jurisdiction of the Commission, affected by an error of law and arbitrary and capricious. More specifically, petitioner claims that (1) the Commission violated the antidiscrimination provisions of the Public Service Law, including Public Service Law § 66 (12) (d), by ordering NYSEG to grant special, preferential contracts to two specially favored customers, containing provisions not available under the tariffs available to other similarly situated customers; (2) the Commission did not have the authority to order NYSEG to enter into ESAs with Corning and Nucor .as Public Service Law § 66 (12-b) (a) does not empower the Commission to compel utilities to enter into flex rate contracts; and (3) the Commission failed to include a floor price provision for service to Nucor’s entire *469 existing load or for any service to Corning during the first seven years of its contract pursuant to Public Service Law § 66 (12-b) (a).
CPLR 7803 restricts the court’s review to certain delineated questions. At issue in the present matter are those questions posed by CPLR 7803 (2) and 7803 (3). CPLR 7803 (2) permits the court to consider “whether the body or officer proceeded, is proceeding or is about to proceed without or in excess of jurisdiction.” CPLR 7803 (3) permits the court to consider “whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed.” A court must be mindful of the appropriate standard of review in an article 78 proceeding by determining whether the proceeding is in the nature of mandamus to review, certio-rari or mandamus to compel (see, CPLR 7803; Matter of Scherbyn v Wayne-Finger Lakes Bd. of Coop. Educ. Servs., 77 NY2d 753, 757 [1991]).
A petitioner seeking mandamus to compel “must have a clear legal right to the relief demanded and there must exist a corresponding nondiscretionary duty on the part of the administrative agency to grant that relief’ (Scherbyn v Wayne-Finger Lakes Bd. of Coop. Educ. Servs., 77 NY2d 753, 757 [1991], citing CPLR 7803 [1]; Matter of Crain Communications v Hughes, 74 NY2d 626; Matter of Kupersmith v Public Health Council, 63 NY2d 904; Matter of City of Newburgh v Public Empl. Relations Bd., 63 NY2d 793; Matter of De Milio v Borghard, 55 NY2d 216; Matter of Legal Aid Socy. v Scheinman, 53 NY2d 12; Matter of Police Conference v Municipal Police Training Council, 51 NY2d 810; see also, McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C780L4, at 31 [1981]).
“In a proceeding in the nature of mandamus to review, however, a court examines an administrative action involving the exercise of discretion. Mandamus to review resembles certiorari, except that in a certiorari proceeding a quasi-judicial hearing normally is required and the reviewing court has the benefit of a full record. * * * In a mandamus to review proceeding, however, no quasi-judicial hearing is required; the petitioner need only be given an opportunity ‘to be heard’ and to submit whatever evidence he or she chooses and *470 the agency may consider whatever evidence is at hand, whether obtained through a hearing or otherwise. The standard of review in such a proceeding is whether the agency determination was arbitrary and capricious or affected by an error of law.” (Id. at 757-758, citing CPLR 7803 [3]; Siegel, NY Prac § 558, at 874-875 [2d ed]; see also, Matter of 125 Bar Corp. v State Liq. Auth., 24 NY2d 174; Matter of Colton v Berman, 21 NY2d 322; Matter of Ayers v Coughlin, 137 AD2d 300, 306, mod 72 NY2d 346; Carrion v Webb, 131 AD2d 806; Matter of Harlem Val. United Coalition v Hall, 80 AD2d 851, affd 54 NY2d 977; Graca v State Liq. Auth., 32 AD2d 879; Rochester Colony v Hostetter, 19 AD2d 250; see generally, 5 NY Jur 2d, Article 78 and Related Proceedings § 78.)
Furthermore, “an administrative agency’s interpretation of the statute it is charged with implementing is entitled to varying degrees of judicial deference depending upon the extent to which the interpretation relies upon the special competence the agency is presumed to have developed in its administration of the statute” (Matter of Lippman v Public Empl. Relations Bd., 263 AD2d 891, 892 [3d Dept 1999], citing Matter of Rosen v Public Empl. Relations Bd., 72 NY2d 42, 47; see, Matter of Gruber [New York City Dept, of Personnel — Sweeney], 89 NY2d 225, 231). Great deference is accorded to an agency’s judgment where its interpretation “involves knowledge and understanding of underlying operational practices or entails an evaluation of factual data and inferences to be drawn therefrom” (id., citing Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459; see, Matter of Rosen v Public Empl. Relations Bd., supra at 47). However, it has been repeatedly stated that “where * * * the question is one of pure statutory construction ‘dependent only on accurate apprehension of legislative intent [with] little basis to rely on any special competence’ * * * judicial review is less restricted as ‘statutory construction is the function of the courts’ ” (id., citing Matter of Rosen v Public Empl. Relations Bd., supra at 47-48 [citation omitted], quoting Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459; see, Matter of Gruber [New York City Dept. of Personnel — Sweeney], supra; Matter of Town of Mamaroneck PBA v New York State Pub. Empl. Relations Bd., 66 NY2d 722, 724).

Public Service Law § 66 (12) (d)

NYSEG claims that the Commission acted in excess of its jurisdiction and in an arbitrary and capricious manner as its *471 March 25 and April 2 determinations were contrary to the an-tidiscrimination provisions of the Public Service Law, and in particular section 66 (12) (d), when it ordered NYSEG to furnish special contract terms to respondents Corning and Nu-cor that are not available to NYSEG’s other customers and inconsistent with NYSEG’s tariffs applicable to other customers, the latter consisting of schedules required by law to be filed with the Commission which set forth the general terms of NY-SEG’s flex rate contracts. As an example, NYSEG contends that “the Nucor and Corning contracts have longer terms than other NYSEG flex rate contracts, and longer than is authorized by NYSEG’s flex rate tariffs.” NYSEG also points to the absence of price floors, “as opposed to the marginal-cost-plus-one-cent floor price which is incorporated in all other NYSEG flex rate contracts and in its flex rate tariffs, and which, indeed, was established as a guideline for all utilities’ flex rate contracts in the PSC’s Opinion No. 94-15.” NYSEG not only contends that the subject orders are contrary to Public Service Law § 66 (12) (d), but also that Public Service Law § 66 (12-b) (a) does not authorize the Commission to approve flex rate contracts for single customers, therefore the Commission acted in excess of its jurisdiction. More specifically, NYSEG argues that Public Service Law § 66 (12-b) (a) only authorizes the Commission to approve flex rate contracts for “classes” of similarly situated customers.
Public Service Law § 66 (12) (d) provides that
“No utility shall charge, demand, collect or receive a greater or less or different compensation for any service rendered or to be rendered than the rates and charges specified in its schedule filed and in effect; nor shall any utility refund or remit in any manner or by any device any portion of the rates or charges so specified, nor extend to any person any form of contract or agreement, or any rule or regulation, or any privilege or facility, except such as are regularly and uniformly extended to all persons under like circumstances.”
In its March 25 Order and April 2 Order, the Commission held that “[t]he authority to direct entry into the flex rate contract * * * may be found in PSL § 66 (12-b) (a) and (a) (2), which authorize the designation of‘appropriate’ classes of business customers as eligible for ‘special rates or tariffs’ in order to prevent the loss of customers or to attract new customers.” Public Service Law § 66 (12-b) (a) provides, in relevant part, that
*472 “The commission shall: * * *
“In consultation with the commissioner of the department of commerce have power * * * 2. to designate or form classes of customers as appropriate for special rates or tariffs, in order to prevent loss of such customers, or to attract new customers where necessary to maintain economic use of utility facilities.
“Any such special rate or tariff shall be so designed as to recover the incremental cost of providing service to such customers and to contribute to the common costs which otherwise would be borne by other customers.”
The instant proceeding is in the nature of mandamus to review. As discussed above, the applicable standard of review for this court’s consideration is whether the agency determination was arbitrary and capricious or affected by an error of law. In applying this standard to the instant matter, the court finds that the Commission’s March 25 and April 2 Orders were neither arbitrary and capricious nor were they affected by an error of law as the Commission did not violate the antidiscrimi-nation provisions of the Public Service Law. The applicability of Public Service Law § 66 (12) (d) to the instant dispute is a question involving “pure statutory construction ‘dependent only on accurate apprehension of legislative intent [with] little basis to rely on any special competence’ ” of the Commission (Matter of Lippman, supra at 892, citing Matter of Rosen, supra at 47-48, quoting Kurcsics, supra at 459; see, Matter of Gruber [New York City Dept, of Personnel — Sweeney], supra; Matter of Town of Mamaroneck PBA, supra at 724). Respondent Corning offers the Memorandum of Senator Dale M. Volker, sponsor of Public Service Law § 66, wherein Senator Volker states, inter alia, that
“The purpose of this bill is to retain and attract businesses, and provide employment opportunities in areas undergoing severe business dislocation and economic hardship. * * * The bill also provides for special incentive rates or tariffs when the Commission finds that they are appropriate to attract new customers or to prevent the loss of customers, and necessary to maintain economic use of the utility company’s facilities. * * * ”
The court is not persuaded by NYSEG’s argument that the two flex rate contracts awarded to respondents Corning and *473 Nucor violate Public Service Law § 66 (12) (d) since they contain terms different from those awarded other NYSEG customers pursuant to NYSEG’s schedule of tariffs. In the first instance, Public Service Law § 66 (12) (d) is not a restriction upon the authority of the Commission, but rather upon utilities to refrain from extending to like customers different conditions of service, and to adhere to the terms specified in their schedules filed with the Commission. If this court were to impose the restrictions of Public Service Law § 66 (12) (d) upon the Commission, then the purpose of Public Service Law § 66 (12-b) (a) would become obsolete since the Commission would be prohibited from designating customers to receive special rates or tariffs outside the parameters of a particular utility’s schedule of rates and tariffs. This would, in turn, frustrate the legislative intent behind Public Service Law § 66, namely, to attract new customers or prevent the loss of customers. It would, in essence, restrict the Commission’s authority, rather than broaden it, the latter being the intent of the Legislature in approving Public Service Law § 66 (12-b) (a).
Even if the subject flex rate contracts contain provisions more favorable than those extended to other NYSEG customers, rate discrimination has been upheld “if it is either cost-justified or if some other rational basis is to be found in the record” (New York State Council of Retail Merchants v Public Serv. Commn. of State of N.Y., 45 NY2d 661, 669 [1978], citing Matter of Lefkowitz v Public Serv. Commn., 40 NY2d 1047, 1048).
With respect to the Nucor contract, the Commission approved, inter alia, (1) a seven-year contract term for base rate electric service to existing demand at its steel facility “because NYSEG’s flex rate tariff provides for contracts of that length”; (2) Nucor’s base rate price as it was “greater than the marginal cost we forecast NYSEG will incur in supplying electricity to Nucor’s existing demand over the next seven years” and “[s]ince the price exceeds marginal cost, there is a contribution towards NYSEG’s system common costs”;[1] (3) a 10-year contract term for electric service to the new (incremental) load it plans to add to the steel facility “[bjecause the installation of incremental load at Nucor’s location is particularly desirable” and “[t]he *474 floor price provision ensures that Nucor will always pay more than marginal costs, with a contribution towards system costs”; and (4) the absence of a regulatory out clause since the Commission “ensured that NYSEG will recover any lost revenue created here” and “[t]he utility is entitled to no more, and a regulatory out clause affording additional guarantees would undermine the stability of the contract to the detriment of Nucor.” Furthermore, the Commission notes in its March 25 Order that “the purpose of this flex rate contract price * * * is to retain Nucor — NYSEG’s largest single-site customer. The economic benefits justifies waiver of the 1$ contribution requirement under these circumstances.”
With respect to the Corning contract, the Commission approved, inter alia, a seven-year contract term; Coming’s proposed fixed price; Coming’s proposed three-year extension to the contract term related to installation of its new load; and the absence of a regulatory out clause for reasons very similar to those noted in the Commission’s March 25 Order concerning the Nucor contract. Additionally, the Commission cites the following as a basis for its determinations with respect to the Corning contract:
“Coming’s $200 million expenditure on its 300,000 square foot manufacturing facility is the largest single investment announced in NYSEG’s service territory during 2001. It will create 250 new high-wage jobs, at a payroll of $21 million per year. $2.0 million will be added to the state’s tax roles. The impact of the facility on the surrounding economically-depressed region will substantially boost overall economic activity, thereby enhancing NYSEG’s revenues. These benefits would be lost if the 1<¿ contribution were imposed.”
Nor is the court persuaded by NYSEG’s interpretation of Public Service Law § 66 (12-b) (a), so as to necessitate the formation of a group of customers before the Commission may approve special rates or tariffs, and to restrict the Commission’s authority to permitting utilities to offer special rates and tariffs, rather than vesting the Commission with the authority to prescribe special rates and tariffs. Such an interpretation is contrary to the legislative intent behind Public Service Law § 66. As quoted above, the purpose of Public Service Law § 66 “is to retain and attract businesses” and to “provide [] for special incentive rates or tariffs when the Commission finds that they are appropriate to attract new customers or to prevent *475 the loss of customers” (emphasis added). Additionally, the designation of a “class” of customers can also be interpreted to mean a type or classification of customer the Commission wishes to attract or prevent losing, which may consist of a single customer. To suggest that the statute requires a grouping of customers before the Commission is authorized to extend special rates or tariffs ignores the legislative purpose behind the enactment of Public Service Law § 66 (12-b) (a), as discussed above.
In consideration of the foregoing principles and the Commission’s grounds, the court finds that the Commission’s determinations to grant the subject flex rate contracts to respondents Corning and Nucor were not contrary to Public Service Law § 66 (12) (d) or in excess of the Commission’s jurisdiction, and that the reasons cited by the Commission supporting its determinations, including its reliance upon Public Service Law § 66 (12-b) (a), constitute rational grounds for their determinations.

Commission’s Authority Pursuant to Public Service Law § 66 (12-b) (a)

NYSEG next contends that the Commission’s determinations were arbitrary and capricious as it acted in excess of its jurisdiction and contrary to law when it ordered NYSEG to enter into the flex rate contracts with respondents Corning and Nu-cor, thereby violating the provision of Public Service Law § 66 (12-b) (a), which only authorizes the Commission to approve special rates or tariffs proposed by a utility, and it does not authorize the Commission to compel utilities to enter into flex rate contracts with customers. NYSEG further argues that no other Public Service Law provision authorizes the Commission to compel utilities to take such action.
The court is not persuaded by NYSEG’s argument in this regard. The Commission’s authority to compel a utility to enter into a flex rate contract, although not expressly delegated to it by the Legislature within the language of the Public Service Law, is nonetheless incidental to the Commission’s express powers under Public Service Law § 66, and is certainly “required by necessary implication to enable the Commission to fulfill its statutory mandate [s]” (Matter of Niagara Mohawk Power Corp. v Public Serv. Commn. of State of N.Y., 69 NY2d 365, 369 [1987], citing Matter of Consolidated Edison Co. v Public Serv. Commn., 47 NY2d 94, 102, revd on other grounds 447 US 530, revd on remand on other grounds 51 NY2d 816; Matter of Rochester Tel. Corp. v Public Serv. Commn., 87 AD2d *476 672, 673, affd 58 NY2d 874; see also, Public Service Law § 4 [1]). “Among the powers delegated to the Commission is the authority to establish the rates charged by a utility for gas and electric service” (id., citing Public Service Law § 66 [12]; see generally, Comment, Utility Rates, Consumers, and the New York State Public Service Commission, 39 Alb L Rev 707 [1975]). “Indeed, it has been recognized that when it comes to setting rates for such service the Commission has been granted ‘the very broadest of powers’ (see, Matter of Campo Corp. v Feinberg, 279 App Div 302, 305, affd 303 NY 995), the Legislature mandating only that the rates fixed be ‘just and reasonable’ (see, Matter of Abrams v Public Serv. Commn., 67 NY2d 205, 211-212 [construing Public Service Law § 72])” (id.). With the amendment of Public Service Law § 66 to add subdivision (12-b) (a), the Commission’s authority was expanded to include the authority to establish special rates or tariffs charged by utilities.
In Niagara Mohawk Power Corp. v Public Serv. Commn. of State of N.Y. (supra), the Court held that “[t]he power to order refunds of imprudent charges collected under fuel adjustment clauses may be implied from the Commission’s general rate-making powers and from its authority over fuel adjustment allowances under former section 66 (12) of the Public Service Law * * * ” (id. at 368). The Court reasoned that (at 371-372)
“In the past when determining whether the Public Service Commission has acted outside the scope of its legitimate power, we have engaged in ‘a realistic appraisal of the particular situation to determine whether the administrative action reasonably promotes or transgresses the pronounced legislative judgment’ (Matter of Consolidated Edison Co. v Public Serv. Commn., 47 NY2d 94, 102, supra; see generally, Fitzpatrick, Toward a Broad Reading of Implied Powers of State Public Utility Commissions: Combatting a Legacy of Laissez Faire, 90 Dick L Rev 415 [1985]). When the Commission acts pursuant to its statutory authority to set utility rates, the ‘pronounced legislative judgment’ is that the rate set should be ‘just and reasonable’ (Public Service Law § 72). If the rate-setting process results in a rate tariff reflecting ‘a just and reasonable balancing of consumer and investor interests’, the legislative intent, as well as constitutional and *477 decisional mandates, is satisfied (see, Matter of Abrams v Public Serv. Commit., 67 NY2d 205, 215, supra).”
Like the Court in Niagara Mohawk (supra), this court also finds that the Commission’s power to order a utility to execute a flex rate contract may be implied from its general rate-making powers, its authority over the designation of customers appropriate to receive special rates or tariffs and the legislative intent behind Public Service Law § 66.
The Commission’s general rate-making powers are codified, inter alia, at Public Service Law §§ 72 and 66 (5). Public Service Law § 72 provides, in relevant part, that
“[a]fter a hearing and after such an investigation as shall have been made by the commission or its officers, agents, examiners or inspectors, the commission may, by order, fix just and reasonable prices, rates and charges for gas or electricity to be charged by such corporation or person, for the service to be furnished * * * . Any such change in price shall be upon such terms, conditions or safeguards as the commission may prescribe” (emphasis added).
Additionally, Public Service Law § 66 (5) provides, in relevant part, that
“Whenever the commission shall be of opinion, after a hearing had upon its own motion or upon complaint, that the rates, charges or classifications or the acts or regulations of any such person, corporation or municipality are unjust, unreasonable, unjustly discriminatory or unduly preferential or in anywise in violation of any provision of law, the commission shall determine and prescribe in the manner provided by and subject to the provisions of section seventy-two of this chapter the just and reasonable rates, charges and classifications thereafter to be in force for the service to be furnished * * * ” (emphasis added).
The foregoing provisions, together with the Commission’s authority to designate customers appropriate to receive special rates or tariffs pursuant to Public Service Law § 66 (12-b) (a) (2), and the legislative purpose behind Public Service Law § 66, including the attraction of new customers and the prevention of the loss of customers, support the authority of the Commission to compel NYSEG to enter into the subject flex rate contracts with Corning and Nucor. Corning and Nucor are customers the Commission has determined appropriate to receive special rates and tariffs, and the authority of the Com *478 mission to compel NYSEG to enter into the subject contracts is “required by necessary implication to enable the Commission to fulfill its statutory” authority pursuant to Public Service Law § 66 (12-b) (a), if not directly authorized by Public Service Law §§ 72 and 66 (5) quoted above.[2]
Thus, the court finds that the Commission did not act in excess of its jurisdiction, contrary to law or in an arbitrary and capricious manner when it ordered NYSEG to enter into the subject flex rate contracts with Corning and Nucor pursuant to Public Service Law § 66 (12-b) (a).

Absence of Price Floor Provisions

NYSEG’s final argument is that the Commission acted in excess of its jurisdiction when it decided to exclude from both contracts a provision for the recovery of incremental costs plus a contribution to common costs, otherwise referred to as a marginal-cost floor, pursuant to Public Service Law § 66 (12-b) (a), and that such a determination was contrary to law and arbitrary and capricious.
The relevant portion of Public Service Law § 66 (12-b) (a) states that “Any such special rate or tariff shall be so designed as to recover the incremental cost of providing service to such customers and to contribute to the common costs which otherwise would be borne by other customers.”
In support of its position, NYSEG refers to its own tariff “approved by the PSC [which] requires that [flex rate] contracts include a provision guaranteeing that the rates thereunder will not be less than marginal cost plus one cent per kilowatt-hour.” NYSEG also refers to PSC Opinion No. 94-15 to argue that such a floor price in flex price contracts is mandated citing that portion of the opinion which states that “[a] floor price for flexible rates will be calculated by each utility, and will generally be set at no lower than the marginal cost of service to the customer plus 10/kWh.” NYSEG further points to that portion of the Commission’s orders denying rehearing wherein it states that a price floor was “not needed” because “the [base rate] price is greater than the marginal cost we forecast NYSEG will incur in supplying electricity * * * over the next seven years, *479 calculated as of the date of this Order.” NYSEG argues that Public Service Law § 66 (12-b) (a) requires that the Commission “guarantee that the rates it sets under the statute will meet the statutory standard over the life of the contract * * * [which] can only be done by the use of a price floor. A forecast by its nature cannot provide the certainty that the statutory standard will be satisfied which the statutory language and the legislative history demand, particularly over the lengthy ten-year contract term mandated here.”
Contrary to the arguments posited by NYSEG, the court finds that the absence of a “marginal-cost floor” or “price floor” in the subject flex rate contracts is not contrary to Public Service Law § 66 (12-b) (a), and therefore the Commission did not act in excess of its jurisdiction or in an arbitrary and capricious manner when it decided to exclude such a provision from the subject contracts. Public Service Law § 66 (12-b) (a) does not prescribe a particular formula the Commission is required to apply to special rates or tariffs, it merely requires that any special rate or tariff be designed so as to recover incremental costs and contribute to common costs. Nor is the Commission bound by NYSEG’s tariff schedule in prescribing a “special rate or tariff” pursuant to Public Service Law § 66 (12-b) (a). Such a restriction on the Commission’s authority thereunder might impede its ability to attract new customers or prevent the loss thereof, the very purpose of Public Service Law § 66 (12-b) (a). If the Commission’s determination achieves the purpose of Public Service Law § 66 (12-b) (a) and is supported by a rational basis, it cannot be said to have been made in contravention of Public Service Law § 66 (12-b) (a) and in excess of the Commission’s jurisdiction thereunder.
In this instance, the court must give “great deference” to the Commission’s judgment since its interpretation and application of the relevant portion of Public Service Law § 66 (12-b) (a) necessarily “involves knowledge and understanding of underlying operational practices or entails an evaluation of factual data and inferences to be drawn therefrom” (Matter of Lippman, supra at 892, citing Kurcsics, supra at 459; see, Matter of Rosen, supra at 47). In both the March 25 and April 2 Orders, the Commission determined, as supported by trade secret evidence NYSEG submitted, that the price was greater than the marginal cost they forecasted that NYSEG will incur in supplying electricity, and therefore a contribution toward NYSEG’s common costs would occur. The Commission further determined that since the price exceeded the marginal costs, *480 there would also be a contribution toward NYSEG’s system costs. Thus, the Commission ultimately determined that the proposed base price in each contract satisfied the relevant portion of Public Service Law § 66 (12-b) (a) discussed hereunder. The court also notes that NYSEG has failed to offer proof to show that the Commission’s forecast was in error, merely speculating as to its future reliability. Finally, the court notes those portions of the Commission’s March 25 and April 2 Orders wherein it waives the 10 per kWh standard identified in Opinion No. 94-15 stating
“[a]s NYSEG concedes, Opinion No. 94-15 provides that the 10 contribution requirement could be revisited. Imposing the requirement under these circumstances would defeat the purpose of this flex rate contract price, which is to retain Nucor — NY-SEG’s largest single-site customer. The economic benefits this customer affords to NYSEG’s service territory more than justifies a waiver of the 10 contribution requirement under these circumstances.”[3]
Thus, considering the foregoing, the court finds that the absence of a price floor in the Corning and Nucor flex rate contracts is not contrary to Public Service Law § 66 (12-b) (a), and accordingly is not a determination made in excess of the Commission’s jurisdiction, nor is it arbitrary and capricious.
The court has considered the parties’ remaining arguments, and in light of the foregoing, the court declines to make any determinations with respect thereto as unnecessary.
Accordingly, it is ordered and adjudged that the petition be and hereby is dismissed.

. As will be discussed in greater detail, the Commission further states that “[t]o the extent that Nucor’s base price fails to meet the standard of a 1(2 per kWh contribution to system common costs identified in Opinion No. 94-15, that standard is waived. As NYSEG concedes, Opinion No. 94-15 provides that the 1(2 contribution requirement could be revisited.”

. The court relies particularly upon that portion of Public Service Law §§ 72 and 66 (5) wherein it states “[a]ny such change in price shall be upon such terms, conditions or safeguards as the commission may prescribe” and “the commission shall determine and prescribe in the manner provided by and subject to the provisions of section seventy-two of this chapter,” respectively.

. The relevant excerpt from Opinion No. 94-15 states that “Given that retention of a contribution from each customer toward common costs is an important policy goal and that a 10 adder should be sufficient to account for environmental externalities, the staff recommendation is reasonable. The utilities’ criticism of the recommendation is not persuasive, in view of their failure to assert economic harm or loss of competitive ability * * * Moreover, this matter could he revisited if the floor started to cause difficulties for utilities negotiating competitive agreements with their customers” (34 PSC 1008, 1018-1019 [footnote omitted and emphasis added]).