*205 OPINION OF THE COURT
Joan B. Lobis, J.
Petitioners Michael Mulgrew, as president of the United Federation of Teachers, Local 2 (UFT), American Federation of Teachers, AFL-CIO, the Alliance for Quality Education, the New York State Conference of NAACR Scott M. Stringer, Eric Adams, Bill Perkins, Hakeem Jeffries, Alan Maisel, Robert Jackson, Charles Barron, Erik Martin Dilan, Mark Welprin, Lewis A. Fidler, Theodore Garcia, Vanessa Wallace, Hector Nazario, James Devor, Belinda Brown, Stefanie Siegel and Dan Simoes[1] bring this CPLR article 78 proceeding against respondents, the Board of Education of the City School District of the City of New York and Joel I. Klein, as Chancellor of the City School District of the City of New York, seeking a declaration that respondents failed to comply with article 52-A of the Education Law in connection with their decision to close and/or change the utilization of 19 city schools, to annul the votes of the Panel for Educational Policy to close and/or change the utilization of those schools, and an order that respondents comply with article 52-A.
On March 1, 2010 respondents agreed to take no further steps, until oral argument on March 9, 2010, with respect to the process of matching students with high schools for the 2010-2011 year. On March 9, 2010 this court granted petitioners’ request for a temporary restraining order, extending the stay of the matching process until the determination of petitioners’ motion for a preliminary injunction.
Because the court has concluded that there are no significant issues of fact to be determined at a separate trial on the merits, and in order to prevent even greater delays in the matching *206 process, petitioners’ application for a preliminary injunction and their request for relief on the merits are consolidated, and this decision is being treated as one for final relief.
In 2009, as part of legislation extending the office of the chancellor of the city school district of the City of New York and mayoral control of the New York City schools, the Legislature required that when the chancellor proposes to close, or significantly change the utilization of a school, including the phase out, grade reconfiguration, re-siting, or co-location of schools, for any public school located within the city district, the chancellor must prepare an educational impact statement (EIS) which includes the following:
“(i) the current and projected pupil enrollment of the affected school, the prospective need for such school building, the ramifications of such school closing or significant change in school utilization upon the community, initial costs and savings resulting from such school closing or significant change in school utilization, the potential disposability of any closed school;
“(ii) the impacts of the proposed school closing or significant change in school utilization to any affected students;
“(iii) an outline of any proposed or potential use of the school building for other educational programs or administrative services;
“(iv) the effect of such school closing or significant change in school utilization on personnel needs, the costs of instruction, administration, transportation, and other support services;
“(v) the type, age, and physical condition of such school building, maintenance, and energy costs, recent or planned improvements to such school building, and such building’s special features;
“(vi) the ability of other schools in the affected community district to accommodate pupils following the school closure or significant change in school utilization; and
“(vii) information regarding such school’s academic performance including whether such school has been identified as a school under registration review or has been identified as a school requiring academic progress, a school in need of improvement, or a *207 school in corrective action or restructuring status.” (Education Law § 2590-h [2-a] [b].)
The statute also requires that at least six months before the first day of school in the next school year, the EISs shall be made publicly available via the Board of Education’s official Web site, and a copy shall be filed with “the city board, the impacted community council, community boards, community superintendent, and school based management team.” (Education Law § 2590-h [2-a] [c].)
In addition, between 30 and 45 days following the filing of an EIS, “the chancellor or deputy chancellor, or in the case of a proposed significant change in school utilization the chancellor or his or her designee, shall hold a joint public hearing with the impacted community council and school based management team” to enable interested parties to present their comments and concerns concerning the planned school closures or changes in utilization. (Education Law § 2590-h [2-a] [d].) Following the public review process and prior to voting on the original proposed, the Board of Education shall make available to the public a summary and analysis of the public comments received and a description of any changes in the proposal made as a result of the comments, or an explanation of why any significant alternatives were not incorporated into the proposal. (Education Law § 2590-g.)
In December 2009 the Board of Education announced that it planned to close and/or significantly change the utilization of 20 New York City schools. EISs issued with respect to those schools were posted on the Web site of the Board of Education,[2] and the schools were instructed to distribute letters to the parents, notifying them that the EISs were available on-line, informing them of the date and time of a “joint public hearing” required pursuant to the Education Law, and notifying them that speaker signup would be permitted 30 minutes before the beginning of the meeting and continuing until 15 minutes after the meeting commenced. The notices stated that there would be no question and answer periods, though apparently, respondents did agree to permit questions at certain meetings.
Following the public meetings, reports were issued by the Department of Education, summarizing any oral or written comments and explaining why the proposals for the respective schools were unchanged. The majority of those reports were is *208 sued on January 26, 2010 the day the Panel for Education Policy of the Board of Education (PEP) was slated to vote on the proposals (six reports were issued on January 25, the day before the vote, and one was issued on January 22).
On January 26, 2010 the PEP voted to approve 19 of the 20 proposed closures or changes in utilization for the respective schools.[3] With respect to the 20th school, the Alfred E. Smith Vocational High School in the Bronx, in response to feedback from the community regarding the demand for an automotive program to continue at a school in the Bronx, the proposal to phase out and close the school was changed to a proposal to phase down the school so that the automotive program would remain, and the PEP vote was postponed. (See revised educational impact statement, dated Feb. 4, 2010.)
Petitioners contend that various actions taken by respondents failed to comply with the requirements of section 2590-h of the Education Law. Petitioners argue that respondents failed to comply with the notice requirements of the law. Although the EISs were available on the Department of Education Web site, *209 it appears to be uncontested that hard copies of the EISs were not provided to parents, nor were they available at the affected schools or provided to the respective Community Education Councils (CECs) or School Leadership Teams.
With respect to the public hearings, according to petitioners, members of the CECs and SLTs were not consulted in advance, but were rather notified at the last minute that the meetings were to occur, and were given scripts setting out their respective roles in the hearings; thus, those hearings were not “joint” public hearings as mandated by section 2590-h (2-a) (d) of the Education Law. Finally, although parents and community members were permitted to sign up to speak, they were given only a very limited amount of time, and question and answer sessions were precluded at some of the meetings.
Finally, petitioners contend that the EISs themselves did not contain the information required by Education Law § 2590-h (2-a) (b).
Respondents argue that petitioners lack standing to challenge the decisions to phase out the respective schools, focusing on the UFT and the petitioners who are elected officials. In a case such as this with multiple petitioners, where the court concludes that at least some of the petitioners have standing, it is not necessary to address the standing of the other petitioners. (Saratoga County Chamber of Commerce v Pataki, 100 NY2d 801, 813 [2003], cert denied 540 US 1017 [2003].) To establish standing, a petitioner must show that she or he has been or will be harmed by the administrative action and that the injury falls “within the zone of interests or concerns sought to be promoted or protected by the statutory provision under which the agency has acted.” (New York State Assn. of Nurse Anesthetists v Novello, 2 NY3d 207, 211 [2004].)
Pursuant to Education Law § 2590-h (2-a) (c), the Board of Education is required to hold joint public meetings with the CECs and SLTs of the impacted schools. Here, the court concludes that, at the very least, the petitioners Garcia, Nazario and Devor, who are parents and officials of their respective CECs, and petitioners Siegel and Simoes, who are teachers and officials of SLTs at schools slated to be closed, have the requisite interest to provide standing. The court will therefore not address the issue of standing with respect to the organizational and elected official petitioners.
Citing Matter of Ferrer v Quinones (132 AD2d 277, 283-284 [1st Dept 1987]), respondents next argue that the chancellor’s decision to phase out or close the respective schools is not justi *210 ciable.[4] Respondents mischaracterize the nature of petitioners’ challenge, which is not to the ultimate decisions with respect to the individual schools, but to respondents’ alleged failure to follow the statutory prerequisites in making those decisions. One of the basic purposes of an article 78 proceeding is to determine whether an administrative determination “was made in violation of lawful procedure.” (CPLR 7803 [3]; Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974].)
Because the legislation at issue here is new, it has not yet been interpreted by the courts. In considering the statute, however, the court cannot help but note the nomenclature used by the Legislature in Education Law § 2590-h (2-a) in requiring that EISs be prepared regarding any school closing or significant change in school utilization. The language is similar to that used by the Legislature in the State Environmental Quality Review Act (SEQRA), and it convinces the court that, respondents’ arguments to the contrary notwithstanding, the body of law governing SEQRA is instructive in interpreting the relevant provisions of the Education Law. Pursuant to SEQRA, an agency which is planning to undertake an action which may have a significant impact on the environment must prepare, or cause to be prepared, a detailed environmental impact statement covering areas specified in the statute. (See ECL 8-0109.) Then, the role of the court “is not ... to weigh the desirability of any action or choose among alternatives, but to assure that the agency itself has satisfied SEQRA, procedurally and substantively.” (Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d 400, 416 [1986].) “Court review, while supervisory only, insures that the agencies will honor their mandate regarding environmental protection by complying strictly with prescribed procedures and giving reasoned consideration to all pertinent issues revealed in the process.” (Id. at 417.) Thus, where an agency has failed to comply with the requirements of SEQRA, “[fin order to further the strong policies served by SE-QRA and to not frustrate its important objectives,” the Court of Appeals has concluded that the appropriate remedy is to find *211 the agency action null and void. (Chinese Staff & Workers Assn. v City of New York, 68 NY2d 359, 369 [1986].)
Respondent failed to provide the detailed analysis an impact statement mandates. With respect to the substance of the EISs, although respondents have provided substantial information in response to the statistical requirements of the statute, such as “the current and projected pupil enrollment of the affected school” (Education Law § 2590-h [2-a] [b] [i]) and “the type, age, and physical condition of such school building, maintenance, and energy costs, recent or planned improvements to such school building, and such building’s special features” (§ 2590-h [2-a] [b] [v]), they have failed to provide any meaningful information regarding the impacts on the students or the ability of the schools in the affected community to accommodate those students. Nor did the amended EISs issued in January 2010 with respect to six of the schools remedy these deficiencies.
The EISs completely failed to provide information about specific programs existing at the schools proposed to be closed or phased out, or where the students would be able to find such programs. For example, where the school had a Living for the Young Family through Education (LYFE) center,[5] no mention was made of that program, or where a similar program existed in other city schools.
With respect to the availability of alternate schools, in a boilerplate fashion, the EISs merely indicated the number of seats that were being eliminated by the proposal and stated that they would be absorbed throughout the City. For example, the EIS for the Choir Academy of Harlem states: “Approximately 200 high school seats will be eliminated by the grade reconfiguration of Choir Academy. However those seats will be recovered with the phase-in of 05M436 and other new and existing schools throughout the City.” It further states, “[throughout the course of the phase-out of Choir Academy’s high school grades, there will continue to be a sufficient number of high school seats in Manhattan and throughout the city to serve students who would have attended Choir Academy for high school.” (See EIS proposal for significant change in the utilization of school building M501.) No mention is made of any specialized programs at the Choir Academy or where the students will be able to find those programs.
*212 Petitioners have provided considerable detail regarding the boilerplate treatment and lack of meaningful detail regarding the impact on students of the proposed closures in the various EISs, and respondents have not rebutted those deficiencies. Given the importance of resolving this matter without further delay, the court will not detail similar examples from other EISs. The court has concluded, however, that the shortcomings in the Choir Academy EIS are found in other EISs as well.
With respect to the notice requirements, although the EISs for the affected schools were posted on the Department of Education Web site, it is uncontested that respondents failed to file hard copies of the documents with the impacted community council, community boards, community superintendent, and school-based management teams as required by section 2590-h (2-a) (c). Although some parents and members of CECs and SLTs may have computer and Internet access, certainly not all do. Limiting the “filing” to posting on the Department of Education Web site does not constitute compliance with the express filing requirements of the statute.
Furthermore, although public meetings were held with respect to each school, and members of the respective CECs and SLTs were “invited” to attend those meetings, it cannot be said that those meetings were “joint” meetings, as required by section 2590-h (d). For the notion of a joint meeting to have any meaning, the members of the CECs and SLTs must be part of the process of structuring those meetings and not merely be told when and where to be present and be given a script of what they are to say at the meeting.
Respondents appear to concede that they have failed to comply with the requirements of Education Law § 2590-h, but suggest that the lack of compliance is of a de minimis nature and should be dealt with only prospectively. Furthermore, they suggest that even prospectively, rather than being ordered to comply with the Education Law, they should be permitted to develop their own guidelines for compliance with the statutory requirements, revising the chancellor’s existing regulations.
Respondents’ very arguments would appear to trivialize the whole notion of community involvement in decisions regarding the closing or phasing out of schools. The decision of respondents to alter their plans to close the Alfred E. Smith Career and Technical Education High School, however, underscores the importance of community input in the decision-making regarding school closures.
*213 Discussing the requirement of strict compliance with the public comment mandates of SEQRA, in Williamsburg Around the Bridge Block Assn. v Giuliani (223 AD2d 64, 73-74 [1st Dept 1996]), the Appellate Division expressed the concern that if strict compliance were not mandated, state and local agencies would be tempted to circumvent the legislative mandates. Furthermore, where statutory language is clear regarding procedural steps which must be taken by an agency prior to administrative action, and those steps have not been taken, the administrative action must fail. (See Siegal v New York State Div. of Hous. & Community Renewal, 143 AD2d 430 [2d Dept 1988] [nullifying amendments to the Rent Stabilization Code where Division of Housing and Community Renewal failed to conduct required public hearings].)
The court is well aware that requiring respondents to reissue the EISs for the 19 schools before they complete the matching process for the students at those schools (or other students who may have selected those 19 schools for the 2010-2011 school year) will create inconvenience for respondents and hardships for students who are awaiting the results of the school matching process, but the court cannot overlook what it reluctantly concludes are significant violations of the Education Law by respondents. The court notes that the 2009 amendments to the Education Law were borne out of the legislative process that also provided for continuing mayoral control of the City’s schools. The result was legislation that mandated the preparation of detailed EISs for schools that the chancellor proposed to close or significantly alter, and created a public process with meaningful community involvement regarding the chancellor’s proposals. That entire legislative scheme must be enforced, and not merely the portion extending mayoral control of the schools.
Unless respondents follow the mandatory provisions of Education Law § 2590-h, the CECs, SLTs and community boards will be foreclosed from any meaningful role in the decisions regarding school closings and significant changes in school utilization, and the students and parents of students who are now facing closures of their schools will be deprived of the information that the Legislature mandated they have to assist them in the process of choosing a new school. While nothing herein shall be construed as limiting respondents’ ultimate power to close failing schools, when the EIS process mandated by the Legislature is complied with by respondents, as they reexamine in good faith the various programs in the schools they are proposing to *214 close, and obtain meaningful community involvement, as required by the Education Law, respondents may well change their decisions with respect to some of the 19 schools, as they did with respect to the Alfred E. Smith Vocational High School.
The court wishes to make clear, however, that this decision is not intended to prevent completion of the matching process for any students who are not directly affected by the proposed closure or phase out of the 19 schools, and such actions shall not be construed to be a violation of this decision and order.
Accordingly, it is hereby ordered, adjudged and declared that the petition is granted as follows:
1. with respect to the 19 schools listed above, respondents have failed to comply with the requirements of Education Law §2590-h;
2. the votes of the Panel for Educational Policy to close the 19 schools listed above are null and void;
3. respondents must reissue the EISs for the 19 schools listed in compliance with the requirements of Education Law § 2590-h; and
4. as and until respondents have complied with Education Law § 2590-h, they are permanently enjoined from prohibiting enrollment in the 19 schools affected by this decision.

. Petitioners Stringer, Adams, Perkins, Jeffries, Maisel, Jackson, Barron, Dilan, Weprin, and Fidler are New York City or New York State elected officials. Petitioners Garcia, Nazario and Devor are parents of students enrolled in New York City public schools and are presidents of the Community Education Councils (CECs) for their respective districts. Petitioner Brown is a parent of a student at one of the schools proposed to be closed and a member of the School Leadership Team (SLT) at that school. Petitioners Siegel and Simoes are teachers at schools proposed to be closed and are chair and co-chair, respectively, of the SLTs at their schools. Petitioner Wallace is the parent of a student at a New York City School, a member of the Bronx Community Board and the chair of its Education Committee. The court notes that since the filing of this proceeding, the names of James Brennan, Rubin Diaz, Jr., Marty Markowitz and Zakiyah Ansari have been added to the caption as petitioners, but they have never been formally added as petitioners, and the caption has never been formally amended.

. In January 2010 amended EISs were issued with respect to six of the schools.

. The following schools were included:
New Day Academy — phase out with replacement
Christopher Columbus High School — phase out and co-location
School for Community Research and Learning and New School— phase out with replacement
Frederick Douglas Academy III Secondary School — grade truncation
Global Enterprise High School — phase out and co-location
Monroe Academy for Business/Law — phase out
Charles H. Houston — phase out with replacement
Middle School for Academic and Social Excellence — phase out
Metropolitan Corporate Academy — phase out
Paul Robeson High School — phase out
PAVE Academy Charter School — extension of co-location
W.H. Maxwell Career and Technical Education High School— phase out with replacement
KAPPA II — phase out with replacement
Academy of Collaborative Education — phase out with replacement
Choir Academy of Harlem — phase out with replacement
Academy of Environmental Science High School — phase out and co-location
Norman Thomas High School — phase out with replacement
Beach Channel High School — phase out with replacement
Business, Computer Applications, and Entrepreneurship High
School — phase out with replacement
Jamaica High School — phase out

. The heading of point II of respondents’ brief states “THE DECISION TO PHASE OUT OR CLOSE THE SUBJECT SCHOOLS IS NON-JUSTIFIABLE.” Since petitioners, rather than respondents, contend that respondents’ failure to follow statutory requirements was not justifiable, the court concludes that respondents’ use of the word “non-justifiable” is a typographical error.

. LYFE centers provide support, including child care and parenting classes.