*714 OPINION OF THE COURT
Peter H. Moulton, J.
Petitioners in this CPLR article 78 proceeding seek declaratory and injunctive relief concerning the award of a school charter to respondent Brooklyn Success Academy 3 (BSA 3). Petitioners are parents of students who attend public schools in Community School District 15, the district where BSA 3 has been sited by the City’s Department of Education (DOE). A number of petitioners have children in schools housed in the school building denominated K293, the building where the DOE has decided to “co-locate” BSA 3 with other schools.
It is undisputed that BSA 3’s application for a charter indicated that it was seeking to place the school in Community School District 13 or 14, and that, after the issuance of the charter, the City’s Department of Education gave the school space in Community School District 15. The three districts abut each other in Brooklyn.
Petitioners argue that this move to another community school district requires a revision of BSA 3’s charter.
However, petitioners’ primary claim as stated in their proposed amended petition is that the Education Law mandates community input before a charter school may be approved. Petitioners assert that true community input for BSA 3 was not sought by BSA 3’s parent organization. According to petitioners respondent Board of Trustees of the State University of New York (SUNY Trustees) blindly accepted BSA 3’s representations (1) that it had performed conscientious community outreach, and (2) that this outreach showed that the relevant community was overwhelmingly supportive of the school. Petitioners characterize BSA 3’s community outreach as feeble, bordering on a sham, and argue that the SUNY Trustees should have rejected the charter application on that ground.
As a threshold matter, respondent BSA 3 argues that petitioners do not have standing because they have failed to demonstrate any injury-in-fact that places them within the zone of interests protected by the Education Law. Petitioners respond that the educational impact statement concerning BSA 3’s co-location with other schools in building K293 shows that co-location will cause the building to reach 107% capacity in the 2014-2015 school year. They also argue that they are part of the community that was allegedly ignored by BSA 3’s outreach efforts, and that they were harmed by the failure of BSA 3 and *715 the SUNY Trustees to take their views into account. BSA 3 also claims that petitioners’ claims are time-barred.
On the merits, respondents argue that BSA 3’s application materials showed more than sufficient community outreach and support for the school. Respondents argue that the siting of BSA 3 in Community School District 15 was caused by space constraints in school buildings in Community School Districts 13 and 14, and that no further amendment to the charter is required by law or regulation for this move to an adjacent community school district in the same borough.
Before the court are the following:
(1) petitioners’ original petition and the respondents’ answers and various objections in point of law;
(2) the intervention motion of various parents who wish to enter the lottery for BSA 3. The intervenors are allied in interest with BSA 3 and are represented by the same counsel; and
(3) petitioners’ motion to file an amended petition and respondents’ opposition to the motion.
Background
The sequence of events that led to the issuance of a charter to BSA 3 is not in dispute and is summarized below.
On January 3, 2011, the Charter Schools Institute (Institute), an arm of the State University of New York (SUNY), issued a request for proposals for 63 new charter schools in the state. The Institute serves as staff to the SUNY Trustees on matters pertaining to charter schools.
On February 28, 2011, BSA 3 submitted a joint application with two other schools, Brooklyn Success Academies 2 and 4, concerning proposed charter schools for Community School Districts 13 and 14. All three charter schools are managed by Success Academy Charter Schools (Success Academy) a nonprofit education organization that operates a network of charter schools in New York City. The application made a number of representations concerning outreach conducted by Success Academy to parents, officeholders, and other stakeholders in Community School Districts 13 and 14. It attached over 1,500 petitions for each of the three schools.
On May 26, 2011, respondent Dennis Walcott, Chancellor of the New York City Department of Education, recommended to the Institute that the charters for BSA 2-4 be granted. Chancellor Walcott also noted that there might not be room for all three *716 schools in Community School Districts 13 and 14, and raised the possibility that one or more of the schools might have to be sited in “other contiguous districts.”
On June 5, 2011, the Institute recommended the three schools for approval. The SUNY Trustees voted to approve the charters on June 15, 2011. On June 27, 2011, the SUNY Trustees posted on its Web site a notice of its approval. The SUNY Trustees issued provisional charters to the three schools on August 11, 2011. The Board of Regents approved the charters on September 13, 2011. As of that date, none of the schools had been assigned to a specific building. Thereafter, the Board of Regents posted on-line minutes from the meeting in which BSA 3’s charter was approved.
On October 28, 2011, the Department of Education issued a public notice proposing to locate BSA 3 in building K293 in Community School District 15. Three schools currently occupy the building. The notice contained a link to the educational impact statement, and also provided information concerning a public hearing on November 29, 2011, at which DOE’s Panel for Educational Policy would take public input regarding the co-location of BSA 3 with the other three schools. The meeting went forward. Among the speakers and attendees at the meeting were parents of elementary school-age children, elected officials, members of the Community Education Council, members of the School Leadership Team, and teachers.
On December 14, 2011, the DOE’s governing body, the Panel on Educational Policy, voted to approve the co-location of BSA 3 at building K293 in Community School District 15. On January 25, 2012, the SUNY Trustees found that this decision was outside of its purview and did not require an amendment to BSA 3’s charter. Petitioners assert that they subsequently attempted to appeal this decision, without success, to H. Carl McCall, the Chairman of the SUNY Trustees.
Discussion
A. Petitioners’ Motion to Amend the Petition
After oral argument on the original petition, and after the court had worked out a briefing schedule with the parties, petitioners moved to amend the petition. The proposed amended petition retains the claim in the original petition: that Education Law § 2852 (7) requires that BSA 3 revise its charter before it can be sited in a community school district other than the districts discussed in its charter application. However, the *717 amended petition adds claims under Education Law § 2851 (2) (q) and § 2852 (9-a) (b) (ii). In these new claims, petitioners assert that respondent SUNY Trustees unlawfully approved BSA 3’s charter despite Success Academy’s failure to seek true community input concerning BSA 3.
Leave to amend a pleading shall be “freely given” unless the proposed new claims are clearly without merit or the opposing parties can demonstrate prejudice or surprise. (CPLR 3025; see Anoun v City of New York, 85 AD3d 694 [1st Dept 2011]; Eighth Ave. Garage Corp. v H.K.L. Realty Corp., 60 AD3d 404 [1st Dept 2009].)
The proposed new claims are not clearly without merit. They are based in specific sections of the Education Law and supported by facts set forth in the initial petition. There are few new facts alleged in the amended petition, and only one additional exhibit. Respondents have made no colorable claim of prejudice. The new claims are foreshadowed by the facts alleged in the initial petition. The claims mirror those asserted by another article 78 proceeding naming the same respondents, challenging BSA 3’s sister school, BSA 4. (Southside Community Schools Coalition v Brooklyn Success Academy 4 Charter School, index No. 102054/12.)
Accordingly, the motion to amend the petition is granted.
B. Motion to Intervene
Intervenor respondents are parents who reside in Community School District 15 who wish to send their children to BSA 3. Admission to the school will be by lottery, so at the time the motion was brought, none of the proposed intervenors could be assured that they will be granted admission. There has been no indication from proposed intervenors whether any of their children were subsequently admitted to BSA 3 since the date that the motion was fully submitted.
Petitioners oppose the intervention motion. They point out that proposed intervenor respondents have not submitted a proposed answer to the petition. Petitioners also argue that the intervenors have no right to attend BSA 3 and that they might not gain entrance via the lottery. Accordingly, petitioners argue, the proposed intervenors are not “interested persons” who could be harmed by any delay in the school’s opening. Finally, petitioners argue that the intervenors have no cognizable defense in this article 78 proceeding, which is a challenge to allegedly arbitrary and capricious or illegal agency action. The *718 intervenors do not share any defense with the SUNY Trustees, the DOE, or BSA 3, because the proposed intervenors are individuals — not administrative agencies that must justify challenged action.
CPLR 7802 (d) states that a court “may allow other interested persons to intervene” in an article 78 proceeding. A court has broader authority to allow intervention in an article 78 proceeding pursuant to CPLR 7802 (d) than it does in an action pursuant to CPLR 1013 (see Matter of Greater N.Y. Health Care Facilities Assn. v DeBuono, 91 NY2d 716 [1998]; Kruger v Bloomberg, 1 Misc 3d 192 [2003]; 14-7802 Weinstein-Korn-Miller, NY Civ Prac 1Í 7802.05).
The proposed intervenors’ failure to provide a pleading is not fatal. Their positions are aligned with BSA 3’s. They set forth their interest in their affidavits. Nothing more is required. (See Steglich v Board of Educ. of the City School Dist. of the City of N.Y., 32 Misc 3d 1203[A], 2011 NY Slip Op 51159[U] [2011].)
Petitioners are correct that respondents’ decision to grant BSA 3 a charter will stand or fall depending on whether respondent SUNY Trustees properly found that BSA 3 conducted sufficient community outreach before submitting its application, and on whether respondents properly allowed the siting of BSA 3 in Community School District 15. If respondents cannot demonstrate these actions were rational and in compliance with law, it does not matter that intervenors wish to send their children to BSA 3.
On the other hand it is clear that the proposed intervenors are interested in the timely opening of BSA 3. Even if their interest is contingent before the results of the lottery are known, these intervenors seek to give voice to the desires of parents who seek to send their children to BSA 3. Therefore, they put a human face to the bureaucratic decision making that is at issue in this case. The Education Law requires a charter school applicant like Success Academy to seek input from stakeholders in the relevant community. (Education Law § 2852 [9-a] [b].) No less than the petitioners, the proposed intervenors are stakeholders. Accordingly, the motion to intervene is granted.
C. Threshold Defenses
The respondents raise two threshold defenses: lack of standing and statute of limitations.
1. Standing
BSA 3 challenges petitioners’ standing to bring this article 78 proceeding. It argues that petitioners have articulated no harm *719 to them if the school opens. Therefore, BSA 3 argues, petitioners can state no injury-in-fact. BSA 3 also argues that petitioners are not within the “zone of interests” protected by the Education Law sections invoked by petitioners.
“[A] party has standing to enforce a statutory right if its abuse will cause him injury and it may fall within the ‘zone of interest’ protected by the legislation.” (Matter of Schwartz v Morgenthau, 7 NY3d 427, 432 [2006], quoting Matter of District Attorney of Suffolk County, 58 NY2d 436, 442 [1983].)
Respondents are correct that petitioners have no standing under Education Law § 2852 (7) (b). That provision states:
“When a revision of a charter involves the relocation of a charter school to a different school district, the proposed new school district shall be given at least forty-five days notice of the proposed relocation. In addition, the applicant shall provide an analysis of the community support for such relocation and of the projected programmatic and fiscal impact of the charter school on the proposed new school district of location and other public and nonpublic schools in the area.”
Petitioners assert that the BSA 3’s application stated that it was to be sited in Community School District 13 or 14, and that the SUNY Trustees granted the charter on that basis. Therefore, petitioners argue, the placement of BSA 3 in Community School District 15 requires that Success Academy undertake an analysis of “community support” in District 15. Petitioners state they are members of the relevant community.
This argument fails because Education Law § 2852 (7) (b) refers to a new “school district” not a new “community school district.” The School District of the City of New York encompasses all five boroughs. Section 2590-a (2) of the Education Law defines “community district[s]” within the “city school district” of the City of New York. These districts are commonly called community school districts. When the Education Law means to specify a “community district” — as opposed to a school district — in the Education Law, it does so explicitly. For example, such a distinction is made in Education Law § 2854 (2) (b).
The possibility that BSA 3 might be sited in a community school district other than 13 or 14 is contemplated in its charter. The charter allows BSA 3 to be sited anywhere in Brooklyn, so long as the SUNY Trustees do not expressly disapprove the move.
*720 Accordingly, as petitioners are not part of a “community” in a new school district within the meaning of Education Law § 2852 (7) (b), they do not have standing under that section to challenge respondents’ failure to require a new analysis of community support and a revision of BSA 3’s charter.
Petitioners also invoke Education Law § 2851 (2) (q) and § 2852 (9-a) (b). According to petitioners these two provisions of the Education Law mandate that any charter school applicant gauge community support and opposition to a charter school, and assess the impact of a charter school on other schools in a given area. Petitioners argue that they were “silenced” by BSA 3’s failure to properly solicit views of their community.
Education Law § 2851 (2) (q) provides that a charter school applicant must provide: “Evidence of adequate community support for and interest in the charter school sufficient to allow the school to reach its anticipated enrollment, and an assessment of the projected programmatic and fiscal impact of the school on other public and nonpublic schools in the area.”
This paragraph contains two clauses. The first clause requires charter school applicants to gauge “adequate community support” to determine if the school can “reach its anticipated enrollment.” This portion of the statute requires evidence of support for the school. Accordingly, petitioners — who are opposed to BSA 3 — are not within the zone of interests protected by this portion of the statute. As long as there is sufficient evidence of support — it does not matter what petitioners’ views are.
In its second clause, the statute does not explicitly require respondents to consider the views of community residents in assessing “the projected programmatic and fiscal impact of the school on other public and nonpublic schools in the area.” Respondents are directed to consider “the projected programmatic and fiscal impact of the school on other public and nonpublic schools in the area” but the statute does not direct respondents to any particular source of information. Petitioners allege that they are concerned about a diversion of resources, including school space, away from standard public schools and towards BSA 3. They allege that their views, and those of other opponents of BSA 3, were ignored by BSA 3. However, by its terms, section 2851 (2) (q) does not confer standing on petitioners to raise this claim.
Petitioners state a similar claim under Education Law § 2852 (9-a) (b). That paragraph states in relevant part:
*721 “The board of regents and the board of trustees of the state university of New York shall each develop such request for proposals in a manner that facilitates a thoughtful review of charter school applications, considers the demand for charter schools by the community, and seeks to locate charter schools in a region or regions where there may be a lack of alternatives and access to charter schools would provide new alternatives within the local public education system that would offer the greatest educational benefit to students. Applications shall be evaluated in accordance with the criteria and objectives contained within a request for proposals. The board of regents and the board of trustees of the state university of New York shall not consider any applications which do not rigorously demonstrate that they have met the following criteria: . . .
“(ii) that the applicant has conducted public outreach, in conformity with a thorough and meaningful public review process prescribed by the board of regents and the board of trustees of the state university of New York, to solicit community input regarding the proposed charter school and to address comments received from the impacted community concerning the educational and programmatic needs of students.”
Petitioners have standing under this section. “Community” is not a defined term in the Education Law. However, if this section concerning “community input” is to have any meaning, it must refer to input from residents of the very city neighborhood in which the charter school is to be sited, and from parents who send their children to the very school building where the charter school will be housed. Such people are the nucleus of the affected “community,” however broadly that term is defined.
2. Statute of Limitations
As held above, the only statute under which petitioners have standing is Education Law § 2852 (9-a) (b). The applicable limitations period for this article 78 proceeding is four months. (CPLR 217.) The parties disagree concerning the date that the four-month period began to accrue.
Respondents assert that petitioners’ claims are barred because they were not brought until eight months after the SUNY Trustees approved BSA 3’s charter on June 15, 2011. At the latest, respondents argue, the accrual date is the date that *722 the decision was published on the Web site of the SUNY Charter Schools Institute, which was June 27, 2011. If either June 2011 date is the correct accrual date the petitioners’ remaining claim is time-barred.
For their part, petitioners argue that the relevant accrual date is October 28, 2011, when the Department of Education first issued a public notice proposing to locate BSA 3 in building K293 in Community School District 15. According to petitioners it was at that point that they suffered their alleged injury, an injury that arose from respondents failing to solicit their views opposing BSA 3. Implicit in petitioners’ argument is that the relevant “community” from which the SUNY Trustees were required to seek “input” is the community school district in which the school is to be sited. Until the school was sited, the argument goes, there was no “community” that could suffer an injury. Since this action was filed on February 14, 2012, the proceeding is timely if it accrued on October 28, 2011.
A petitioner may challenge an administrative decision pursuant to article 78 when it is final and binding. (CPLR 217 [1].) The accrual date for limitations purposes is often hotly disputed in article 78 proceedings. It can be particularly difficult to determine the accrual date where, as is the case here, the petitioners were not parties to the challenged administrative decision and were not entitled to personal notice of the final decision. It is further complicated, as is the case here, where there is more than one administrative decision maker. The Court of Appeals has provided a two-step inquiry that aids courts’ analysis in such cases.
“First, the agency must have reached a definitive position on the issue that inflicts actual, concrete injury and second, the injury inflicted may not be prevented or significantly ameliorated by further administrative action or by steps available to the complaining party.” (Matter of Best Payphones, Inc. v Department of Info. Tech. & Telecom. of City of N.Y., 5 NY3d 30, 34 [2005].)
Additionally, petitioners must have some notice of the administrative decision they wish to challenge. (Matter of Metropolitan Museum Historic Dist. Coalition v De Montebello, 20 AD3d 28 [2005].) Public notice can come in a variety of forms, including public meeting (see Branch v Riverside Park Community LLC, 74 AD3d 634 [1st Dept 2010], lv denied 15 NY3d 710 [2010]) or publication on the agency’s Web site (see Matter of Town of Olive v City of New York, 63 AD3d 1416 [3d Dept 2009]).
*723 The timing of the alleged injury on petitioners in this proceeding is not straightforward. As noted above, petitioners assert that they suffered an injury when they discovered that the SUNY Trustees would allow the placement of BSA 3 in Community School District 15 without requiring sufficient outreach in Community School District 15. However, the statute invoked by petitioners, Education Law § 2852 (9-a) (b) (ii), uses the term “community,” it does not use the terms “community school district” or “community district.” The “community” to be solicited under that section is thus broader than Community School District 15. Therefore the injury did not occur when the school was first proposed for Community School District 15.
Petitioners do not wish simply to speak against BSA 3; they seek to void its charter and keep it from opening. It is true that petitioners call for a vetting process that they say would reveal overwhelming community opposition to the school. But they seek such a vetting process for the purpose of convincing the SUNY Trustees that the school should not open at all. In their prayer for relief, petitioners seek an injunction that would permanently enjoin “respondent Brooklyn Success Academy 3 Charter School from opening, operating and maintaining [BSA 3] in School District 15 or any other community school district.” (Emphasis supplied.)
Accordingly, the administrative action that allegedly inflicted harm on petitioners was the decision to allow BSA 3 to open. At first glance, the relevant decision would appear to be the decision to grant BSA 3’s charter. This would appear to support respondents’ argument that the relevant date for accrual of the four-month limitations period is June 15, 2011, the day the SUNY Trustees voted to approve the charter.
However, as set forth in the background section above, there was more administrative action after the June 15 vote. The final gatekeeper appears to have been the Board of Regents, an entity separate from the SUNY Trustees. The Board of Regents is not a party to this proceeding.
Pursuant to Education Law § 2852 (5) the “charter entity,” here, the SUNY Trustees, had to submit the proposed charter agreement to the Board of Regents for review. While the Board of Regents cannot reject the proposed charter, they are empowered to either approve the charter or to return the charter to the charter entity with comments for reconsideration. If the charter is returned to the charter entity, the charter entity must consider the Board of Regents’ comments.
*724 “Thereafter, the charter entity shall resubmit the proposed charter to the board of regents with modifications, provided that the applicant consents in writing to such modifications, resubmit the proposed charter to the board of regents without modifications, or abandon the proposed charter.” (Education Law § 2852 [5-b].)
These sections of the Education Law contemplate an iterative process, short in duration, between the SUNY Trustees and the Board of Regents. While the Regents cannot reject a charter, under Education Law § 2852 (5-b) their returning the charter to the charter entity (here the SUNY Trustees) can result in the charter entity abandoning the proposed charter. Therefore, the decision to grant a charter is not truly final until one of three events occurs: (1) the Regents approve a proposed charter; (2) the Regents take no action on a proposed charter for 90 days, in which case the charter is “deemed” approved (Education Law § 2852 [5-a]); or (3) the charter entity (here the SUNY Trustees) resubmits the charter application to the Regents, at which point the Regents’ approval is essentially a rubber stamp, with no further power to delay or alter the application.
BSA 3’s charter became final under the first of the above scenarios. The operative date is September 13, 2011, the date the Board of Regents voted to approve BSA 3’s charter. At that point, there was no further possibility that the charter might be abandoned by the SUNY Trustees.
The final question is: when did the Board of Regents or the respondents give notice of this final and binding decision? It appears that the Board of Regents’ approval was publicly announced on the Regents’ Web site on October 4, 2011.[1] Particularly as it came after a long public decision-making process, this notification was sufficient. (See Matter of Town of Olive v City of New York, 63 AD3d 1416 [2009], supra; Matter of Johns v Rampe, 23 AD3d 283 [1st Dept 2005], lv denied 6 NY3d 715 [2006]; Matter of Cohen v State of New York, 2 AD3d 522 [2d Dept 2003].) As this notice occurred more than four months prior to the date the initial petition was filed, this proceeding is time-barred.
*725 Petitioners rely on Mulgrew v Board of Educ. of the City School Dist. of the City of N.Y. (28 Misc 3d 204 [Sup Ct, NY County 2010], affd 75 AD3d 412 [1st Dept 2010]) in arguing that publication of a final decision on a Web site is insufficient. However, in Mulgrew the respondents did not adhere to specific statutory requirements for filing educational impact statements. There is no similar statute here that requires a particular method of publicizing the Board of Regents’ decision to the general public.[2]
For the reasons stated, this proceeding is barred by the applicable statute of limitations.
D. The Amended Petition
Even if this proceeding was not time-barred, on the merits respondents have demonstrated that the decision to grant a charter to BSA 3 was not arbitrary or capricious or in violation of Education Law § 2852 (9-a) (b), the only statute that confers standing on petitioners.
Petitioners argue that Success Academy’s community outreach was essentially a walk through a Potemkin Village of parents eager to send their children to BSA 3. According to petitioners, Success Academy falsely stated that there was no opposition to the school, when in fact such opposition was stated at a meeting with school representatives on April 14, 2011. Further, overwhelming opposition would have been expressed, petitioners imply, if only Success Academy had sought to conduct true community outreach in the relevant portions of Brooklyn that would be served by BSA 3. Instead, petitioners assert, BSA 3 conducted “community outreach” that was calculated to obscure the level of community opposition.
Petitioners correctly note that BSA 3’s charter application does not address some of the suggestions of the guidelines that accompany the SUNY Trustees’ request for proposals (RFP). The guidelines for the RFP seek “explicit support” for the proposed school from “community stakeholders or others” and *726 state that “generic support for charter schools ... is not sufficient” (RFP at 80). Petitioners fault BSA 3 for invoking support for its existing schools, located elsewhere in the city, as having nothing to do with support for BSA 3. Petitioners also argue that Success Academy’s petitions, which were signed by 4,500 people, were too generic to provide any useful evidence that the relevant communities in Brooklyn were interested in the type of schools that Success Academy was planning. The petitions do not contain information suggested by the instructions for the RFR such as whether the signatory has school-age children. Petitioners note that a number of signatures are from individuals who reside outside of Community School District 15. However, petitioners do not quantify this number. In any event, as noted above, the relevant “community” from which input must be solicited is greater than Community School District 15.
Petitioners correctly argue that the instructions for the RFP elaborate on section 2852 (9-a) (b) (ii)’s requirement of community input. The instructions for the RFP include the following:
“Per Education Law subdivision 2852(9-a)(b)(ii), the SUNY Trustees are not to consider any proposal that does not reflect a meaningful public review process designed ‘to solicit community input regarding the proposed charter school and to address comments received from the impacted community concerning the educational and programmatic need[s] of students.’ In order to recommend a school for approval, the [charter school application] must demonstrate:
“[1] The community was informed of the proposed school in a timely fashion;
“[2] The community had meaningful opportunities for input; and
“[3] There was a thoughtful process for considering community feedback and incorporating it into the final proposal.
“Please note that seeking input about the proposal is distinct from seeking support for the proposed school. While the application must also show evidence of community interest in and support for the school, this support alone is not adequate in demonstrating that the community was given the opportunity to provide input into the design of the *727 proposed school and that input was carefully considered by the applicant.” (RFP at 46.)
Petitioners state that Success Academy flouted this provision by failing to discuss in its proposal a single concern about the proposed school in the “impacted community.” There does not appear to have been any input solicited concerning the “design” of the school.
Petitioners are correct that Success Academy could have engaged in a more thorough-going canvas of the relevant neighborhoods in Brooklyn to surface concerns and opposition to BSA 3. However, the statute does not require that charter applicants conduct such an exhaustive survey of support and opposition.
The community outreach required by the statute is weak. In the first place, as described above, the word “community” is not defined. This fact leaves to the SUNY Trustees a great deal of discretion in determining whose views must be taken into account. Additionally, the statute requires community input on the “educational and programmatic needs of students” without in any way suggesting how to solicit, organize or record such input. Finally, the statute does not bar the issuance of a charter even where the relevant community, however defined, mounts serious or even overwhelming opposition to a proposed school during the course of the public input required by Education Law § 2852 (9-a) (b). Where the legislature wishes to create a more detailed process for community involvement in schools-related decision making, it has done so. The statute governing school co-location is an example. (See Education Law § 2853 [3].)
It was not arbitrary and capricious for the SUNY Trustees to find that Success Academy complied with the community input requirements of Education Law § 2852 (9-a) (b). The petitions, though they do not provide much detail about the nature of BSA 3, provide some evidence of interest. The application also recounts Success Academy’s correspondence sent to elected officials and other interested parties in the area concerning plans to open the school. Success Academy officials attended community meetings with the community boards that serve the relevant communities, and the Education Councils for Districts 13 and 14. The SUNY Trustees are afforded deference in interpreting the Education Law provisions governing charter schools. (See Matter of Board of Educ. of Riverhead Cent. School Dist. v Board of Regents of Univ. of State of N.Y., 301 AD2d 919 [2003]; *728 Matter of International High School: Charter School at LaGuardia Community Coll, v Mills, 276 AD2d 165 [2000].) The SUNY Trustees could rationally find that the level of community outreach exercised by Success Academy was sufficient to meet the very general requirements of Education Law § 2852 (9-a) (b).
Conclusion
For the reasons stated, it is ordered and adjudged that the petition is denied and this article 78 proceeding is dismissed.

. The memorandum accompanying the September 13, 2011 minutes is dated October 4, 2011. This cover memorandum and the minutes are part of the record of the companion case Southside Community Schools Coalition v Brooklyn Success Academy 4 Charter School (index No. 102054/12). The memo and the minutes appear on the Regents’ Web site at www.regents.nysed.gov/ meetings/2011Meetings/October2011/1011bra2.pdf.

. Education Law § 2857 (1) does impose some notification duties on the Board of Regents and the charter entity (SUNY Trustees). That section states in relevant part:
“At each significant stage of the chartering process, the charter entity [here, the SUNY Trustees] and the board of regents shall provide appropriate notification to the school district in which the charter school is located and to public and nonpublic schools in the same geographic area as the proposed charter school.”
Petitioners are not among the groups entitled to notification under this section.